## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 38623

EMPLOYERS MUTUAL CASUALTY
COMPANY,

    **Plaintiff-Appellant,**

v.

DAVID DONNELLY and KATHY
DONNELLY, husband and wife,

    **Defendants-Respondents,**

and

RIMAR CONSTRUCTION, INC., an Idaho
corporation; IVAN RIMAR, an individual

    **Defendants.**

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, December 2012 Term

2013 Opinion No. 51

Filed: April 19, 2013

Stephen W. Kenyon, Clerk

_____

Appeal from the District Court of the First Judicial District, State of Idaho, Bonner County. Hon. Steven C. Verby, District Judge.

District court decision in declaratory judgment action, <u>affirmed.</u>

Ringert Law, Chtd., Boise, for appellant. James G. Reid argued.

Ellis, Brown & Sheils, Boise, for respondents. Allen B. Ellis argued.

_____

BURDICK, Chief Justice

    This case arises out of a decision from the Bonner County district court in a case between Employers Mutual Casualty Company (EMC), David and Kathy Donnelly (Donnellys), and Rimar Construction, Inc. (RCI). In 2007, EMC brought a declaratory judgment action against the Donnellys and RCI to establish that under its policy of insurance with RCI, EMC had no duty or responsibility to pay damages claimed by the Donnellys in litigation between the Donnellys and RCI. The declaratory judgment action was stayed until a verdict was reached in the underlying

1

action. In the underlying action, the Donnellys were awarded $128,611.55 in damages and $296,933.89 in costs and attorney fees against RCI.

Subsequently the district court entered summary judgment in the declaratory action, finding that there was no insurance coverage for the damages the Donnellys incurred, but that there was coverage for costs and attorney fees awarded in the underlying action. On appeal, EMC argues that the district court erred in its determination that it had a duty to pay attorney fees and costs when there were no damages awarded to the plaintiff subject to the policy coverage. The Donnellys cross appeal, arguing the district court erred in its conclusion that EMC did not have a duty to cover the damages in this case, and that the Donnellys are entitled to attorney fees under I.C. § 41-1839. We affirm the decision of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a dispute between the Donnellys and RCI regarding a construction contract. After a fire, David and Kathy Donnelly engaged RCI to do repairs and further remodeling on the Donnellys' family home in May of 2005. On March 7, 2006, the Donnellys brought an action (Underlying Action) against RCI alleging, among other things, negligent and intentionally faulty workmanship, breach of contract, and breach of warranties. An Amended Verified Complaint was filed on July 31, 2007. The Donnellys alleged substantial damages to property, physical injury, and loss of use. At all applicable times, RCI was covered under a Commercial General Liability Policy (Insurance Policy) issued by EMC on September 14, 2004.

On May 24, 2007, EMC filed a declaratory judgment action against the Donnellys and RCI to establish that under the Insurance Policy, EMC had no duty or responsibility to pay any damages claimed or awarded to Donnelly in the underlying action. RCI made a counterclaim against EMC alleging bad faith and a breach of contract, and the Donnellys initially made a simple denial of EMC's claim. On December 12, 2007, the district court entered an order staying the Declaratory Action until the Underlying Action between the Donnellys and RCI was concluded.

A jury trial on the Underlying Action commenced on June 23, 2008. In a special verdict rendered on July 9, 2008, the jury found that RCI breached the implied warranty of workmanship with the Donnellys resulting in $126,611.55 in damages. The jury also found that RCI violated two provisions of the Idaho Consumer Protection Act (ICPA) entitling the Donnellys to $2,000

2

in damages under I.C. § 48-603. An amended judgment was entered on March 20, 2009, consistent with the special jury verdict.

After the Underlying Action concluded, a settlement agreement was reached between EMC and RCI regarding the declaratory action and the underlying litigation on August 17, 2009. Under the settlement agreement, RCI dropped its counterclaims in the Declaratory Action and agreed not to contest EMC in the Declaratory Action.

EMC and the Donnellys filed for summary judgment in the Declaratory Action. The district court initially denied the cross-motions for summary judgment in an order issued on April 7, 2010. In its denial, the district court held that both parties failed to meet their burden of persuasion when all inferences were resolved in favor of the adverse party. The district court also believed there to be a question of fact as to whether the damages awarded to the Donnellys in the Underlying Action were property damage or contract-based claims. EMC and the Donnellys then filed cross-motions for reconsideration of the summary judgment decision.

In its November 5, 2010 Order re: Motions for Reconsideration (Order), the district court ruled that as contract-based damages there was no insurance coverage for the underlying $128,611.55 in compensatory damages the Donnellys incurred, but there was coverage for the award of $296,933.89 in costs and attorney fees. A Judgment was filed pursuant to the Order on February 23, 2011.

Subsequent to the Judgment, the Donnellys moved for attorney fees in the Declaratory Action. EMC filed its own Motion to Disallow Costs and Fees on March 17, 2011. On May 20, 2011, the district court granted EMC's motion and denied the Donnellys' request for attorney fees incurred in the Declaratory Action. In the order, the district court held that the Donnellys are not entitled to attorney fees under I.C. § 41-1839 because the Donnellys are not an insured of EMC, nor are they entitled to fees under I.C. § 12-120(3) because the Donnellys have no commercial relationship with EMC.

On March 2, 2011, EMC timely appealed the district court's decision regarding the award of attorney fees from the underlying litigation. The Donnellys timely filed a cross-appeal regarding EMC's liability for the damages award and attorney fees in this matter.

## II. ISSUES ON APPEAL

1. Whether the district court erred in determining that EMC had a duty to pay attorney fees and court costs taxed against its insured in a suit brought by the policy claimant for which

3

defense was provided by the insurer, but where no part of the damages awarded to the policy claimant were subject to policy coverage?

2. Whether the district court erred in determining that EMC had no duty to indemnify with respect to the damages awarded to the Donnellys.

3. Whether the district court erred in not awarding attorney fees to the Donnellys under I.C. § 12-120(3).

4. Whether the district court erred in not awarding attorney fees to the Donnellys under I.C. § 41-1839.

5. Whether the Donnellys are entitled to attorney fees on appeal pursuant to I.C. § 41-1839.

## III. ANALYSIS

**A. The district court did not err in determining that EMC had a duty to pay attorney fees and court costs taxed against its insured even though no part of the damages awarded to the policy claimant were subject to policy coverage.**

In its November 5, 2010 Order re: Motions for Reconsideration, the district court determined that EMC was required to pay the attorney fees and court costs taxed against RCI in the underlying litigation. In its Order, the district court held that the insurance policy:

> plainly states that with respect to any suit pursued against an insured which it defends, EMC will pay all costs taxed against that insured. The language appears to be unambiguous, and thus, it must be given its plain meaning. EMC has never set forth any specific language in its policy that ties its promise to pay costs on a finding that there is coverage. Because EMC defended its insured, RCI, in the underlying litigation, EMC is responsible to the Donnellys for the $296,933.89 in fees and costs taxed against RCI in that lawsuit, as well as any interest on that judgment which has accrued.

Additionally, the district court held that any ambiguity in this provision of the policy contract should be construed strongly against EMC and in favor of the Donnellys.

The district court's conclusions were based on its interpretations of the jury verdict. In its analysis, the district court found that the jury awarded damages to the Donnellys based on several factors including:

(1) The basic issue litigated by the parties was whether the construction was completed in a workmanlike manner;

(2) The Donnellys proved that RCI failed to adequately perform the work it contracted to perform;

(3) The agreement between the Donnellys and RCI was a commercial transaction;

(4) Costs and fees were awarded because the gravamen of the action and the resulting verdict was based on a contract based commercial transaction; and

4

(5) The jury did not return a verdict in favor of the Donnellys on a tort based legal theory.

On appeal, EMC argues that the plain language of the applicable policy indicates that EMC had no duty to pay costs and fees with respect to non-covered claims. In response, the Donnellys argue that this Court's opinion in *Mutual of Enumclaw v. Harvey*, 115 Idaho 1009, 772 P.2d 216 (1989), found that costs can be imposed upon the insurer even if the damages are not covered by an applicable insurance policy.

> Language in the policy of this case does not indicate that payment of costs is conditioned upon a final determination that the policy covers the insured's conduct. The language of the policy says that the Company will pay all costs taxed against the insured in any suit defended by the Company. Beyond what appears to be the clear term of the policy, it is arguable that since the Company has the right to control the defense, including the power to refuse settlement, it should also bear the consequences of its case management decisions, including the consequence that the trial court may tax the opponent's costs against the insured.

*Harvey*, 115 Idaho at 1012, 772 P.2d at 219. The policy in *Harvey* states that the insurer will pay "all expenses incurred by Company and all costs taxed against the insured in any suit defended by Company." *Id.*

In this case, the insurance policy contains a provision for supplementary payments:

1. We will pay, with respect to any claim we investigate or settle, or any 'suit' against an insured we defend:

   a. All expenses we incur.

   . . .

   e. All costs taxed against the insured in the 'suit'.

The policy defines "suit" as "a civil proceeding in which damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged."

The question of whether this suit involves applicable injury can be answered by an analysis of a September 7, 2007 reservation of rights letter from EMC to RCI. In the letter EMC states that bodily injury and loss of use were alleged by the Donnellys, "[t]herefore EMC will be providing a defense." The letter expressly reserves "EMC's rights to deny or restrict coverage according to the terms of the policy with EMC." The letter also stated that:

> There is no coverage for allegation of construction defects and/or contract breach alleged in the complaint because they do not involve property damage.

5

Moreover, Exclusions a. and m. and Endorsement 2280 apply to bar coverage for intentional injury, damage to your work, loss of use expense caused by delay and damage caused by professional engineering or architectural work respectively. However, because there is a potential for coverage of bodily injury caused by carbon monoxide EMC is providing a defense.

This Court has previously dealt with the effect of a reservation of rights on an insurer's obligation to pay costs in *Harvey*:

> Mutual of Enumclaw also argues that undertaking Oakes' defense with a reservation of rights exonerates it from having to pay costs. The court rejects this contention. It is generally recognized that coverage defenses may be properly preserved by a reservation of rights agreement. "Preservation" implies the continuation, the saving of something that existed. It is not a destruction of the insured's rights nor a creation of new rights for the Company. It preserves that to which the parties had originally agreed. Mutual of Enumclaw, in Section II, Supplementary Coverages 2.a. agreed to pay "all costs taxed against the insured in any suit defended by the Company." The fact the company reserved its contractual rights before undertaking the defense in no way dissipates its obligation to pay such costs.

115 Idaho 1009, 1013, 772 P.2d 216, 220 (1989) (internal citations and quotations omitted). Also, this Court held in *Harvey* that attorney fees are an element of costs in this context. "The plain, ordinary and popular meaning of 'costs' is the expense of litigation which includes attorney fees." *Id*.

Here, there is a key distinction from the *Harvey* case. In *Harvey*, the duty to pay emanated from the supplemental coverages. In this case, EMC's obligations emanate from the duty to defend as provided in the supplementary payments section of the policy. Although EMC's obligation arises from a different source, the outcome is the same as in *Harvey*. Under the plain language of the contract, RCI's policy states that damages only need to be "alleged" to trigger coverage, they do not need to be proven. Since the Donnellys clearly alleged damages that implicate the applicable provisions of the policy, EMC is obligated to pay "[a]ll costs taxed against the insured in the 'suit.'" Therefore, we hold that the district court correctly concluded that EMC is obligated to pay the $296,933.89 in costs and attorney fees awarded against RCI in the underlying action.

**B. The district court did not err in determining that EMC had no duty under the policy contract to indemnify RCI with respect to the damages awarded to the Donnellys.**

In the Amended Judgment, the district court interpreted the special jury verdict to conclude that RCI breached its implied warranty of workmanship with the Donnellys, but that

there were no damages for negligence. In its Order regarding the motions for reconsideration, the district court held that the damages awarded for breach of an implied warranty sounded in contract, meaning that EMC has no obligation to pay the award under its policy with RCI. In so holding, the district court determined that:

> EMC's Commercial General Liability insurance policy does not act as a performance bond; and it does not provide for payment of damages resulting from a breach of contract. In fact, such damages are excluded from coverage. Because no award was made by the jury for any tort cause of action that was pled and submitted, and because the breach of implied warranty of workmanship as presented in the underlying case was a contract related breach, EMC has no obligation to pay the compensatory damages in the amount of $126,611.55 previously awarded to the Donnellys.

The district court also held that the $2,000 award for violation of the Idaho Consumer Protection Act, I.C. § 48-603, was not covered for two reasons. First, the damages are statutory in nature and not associated with the loss of use of property or with physical injury to tangible property. And second, to prevail under the act, the Donnellys had to establish that RCI knowingly engaged in conduct prohibited by the act. For RCI to knowingly engage in prohibited conduct RCI would have to reasonably expect damages to occur from the conduct, so the district court found the policy contract's Expected or Intended Injury Exclusion to bar coverage.

On cross-appeal, the Donnellys argue on appeal that the jury award should be covered under the policy contract because EMC breached its duty to RCI to implement an allocated verdict and because the jury found that there were no contract damages; leaving only tort as the nature of the damages. In response, EMC argues that the district court correctly determined that the policy contract does not cover the damages the jury awarded.

1. RCI's policy with EMC with regard to damages.

On September 14, 2004, EMC and RCI entered into an agreement of insurance known as a Commercial General Liability Policy. The policy provides coverage for property damage and bodily injury: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." The policy only applies to bodily injury or property damage if:

> (1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory';
> (2) The 'bodily injury' or 'property damage' occurs during the policy period.

The policy defines bodily injury as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." Property damage is defined as:

7

a.  Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.  Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it.

The insurance policy also contains several pertinent exclusions.  The expected or intended injury exclusion of the policy states:

> This insurance does not apply to:
>
> . . .
>
> 'Bodily injury' or 'property damage' expected or intended from the standpoint of the insured.  This exclusion does not apply to 'bodily injury' resulting from the use of reasonable force to protect persons or property.

The policy also contains an exclusion for contractual liability:

> This insurance does not apply to:
>
> . . .
>
> 'Bodily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:
>
> (1) That the insured would have in the absence of the contract or agreement . . . .

For purposes of this action, a plain reading of the policy shows that "bodily injury" or "property damage" are generally covered under the insurance policy unless the injury is expected, intended, or unless liability results from contract.

2.  <u>The nature of the damages awarded to the Donnellys.</u>

On the nature of the damages, the district court concluded that "the jury found there was a breach of contract, but awarded no damages for that specific cause of action.  The jury verdict of $126,611.55 was based solely on the legal theory of breach of the implied warranty of workmanship."

EMC argues that the damages awarded to the Donnellys are excluded from coverage because the damages were the result of a contract, not tortious conduct.  EMC argues that the instructions provided to the jury help demonstrate that the implied breach of workmanship is contract-based.  In particular, Jury Instruction No. 47, which states that "[t]he Donnellys' allege that [RCI] breached implied warranties by failing to perform the agreed upon construction in a workmanlike manner," and instruction No. 50 which states that "[i]n a construction contract, there is an implied warranty that the work is to be completed in a workmanlike manner."

8

The Donnellys argue that the jury found no contract damages, leaving only tort as the basis for liability. Further, the Donnellys argue that EMC breached its duty to RCI by not-requesting an allocated verdict. Additionally, the Donnellys argue in their reply brief that the award for breach of implied warranty of workmanship is covered under the policy contract since the policy covers "physical injury to tangible property" and their amended complaint alleged damage to the integrity of their original home.

In its analysis, the district court held that a breach of the implied warranty of workmanship sounds in contract, not tort. In so concluding, the district court relied upon this Court's holding in *Sumpter v. Holland Realty, Inc*. 140 Idaho 349, 93 P.3d 680 (2004).

> In *Sumpter*, this Court in turn examined its holding in *Taylor v. Herbold*, which stated: The law governing the ability to obtain remedies for breach of contract, as well as tortious behavior, is confusing, with few, if any, court decisions on the subject. Ordinarily, a breach of contract is not a tort. A contract may, however, create a state of things that furnishes the occasion for a tort. 38 Am.Jur. 662, Negligence § 20. If the relation of the plaintiff and the defendants is such that a duty to take due care arises therefrom irrespective of contract and the defendant is negligent, then the action is one of tort. To found an action in tort, there must be a breach of duty apart from the nonperformance of a contract. 52 Am.Jur. 379, Torts, § 26.

140 Idaho at 353, 93 P.3d at 684 (quoting *Taylor v. Herbold,* 94 Idaho 133, 138, 483 P.2d 664, 669 (1971)). Expanding on this point, *Sumpter* stated that:

> It can also be said that if a cause of action for breach of a duty based on a contractual promise could also be maintained without the contract by virtue of a statutory or common law duty, then the action is founded upon tort, not contract.

*Id*. at 354, 93 P.3d at 684.

The key determination for whether an implied warranty of workmanship—and therefore the insurance policy—covers the damages is whether the duty is based upon a contractual promise or if the duty can be maintained without the contract. In the special verdict, the jury found: there was a contract involving the remodeling project between RCI and the Donnellys; RCI did not substantially perform under the contract; a breach of contract caused damage to the Donnellys; and that RCI breached "the implied warranty of workmanship with regard to the manner in which it constructed the Donnelly remodel project." Based on the jury's verdict, the breach of implied warranty of workmanship occurred with regard to RCI's performance under the remodeling contract with the Donnellys. There is no duty beyond the contractual promise between RCI and the Donnellys. Since the insurance policy contains an express exclusion for

9

contractual damages, we hold that the district court correctly found the awarded damages to be outside the scope of the insurance policy.

3. <u>Whether the absence of an allocated verdict obligates EMC to pay the awarded damages.</u>

Alternatively, the Donnellys allege that there is a duty imposed upon EMC to request an allocated verdict. By failing to allocate a verdict, the Donnellys argue that EMC breached its duty to the insured, and that this Court should direct the district court to enter a judgment of coverage. In response, EMC argues that the special verdict rendered by the jury, as opposed to a general verdict, constitutes an allocated verdict.

*a. Whether the underlying verdict was an allocated verdict.*

Here, the Donnellys argue that the special verdict could not be an allocated verdict because it did not address, among other things, tort damages against RCI. More specifically, the Donnellys argue that by failing to request an allocated verdict, EMC imposed an impossible burden on the Donnellys to determine the proportion of damages that are covered under the insurance policy. Black's Law Dictionary defines "special verdict" as one in which "the jury makes findings only on factual issues submitted to them by the judge, who then decides the legal effect of the verdict." Black's Law Dictionary 1697 (9th ed. 2009). In contrast, an unallocated verdict is one that fails to pinpoint or delineate the extent of each party's liability for every claim. *See Duke v. Hoch,* 468 F.2d 973, 975–76 (5th Cir. 1972).

Although the verdict was not allocated, the district court was able to determine from the special verdict the allocation of damages or responsibility for the payment of the damages awarded by the jury. As noted above, the district court correctly—and with no apparent difficulty—identified the jury-awarded damages of $126,611.55 as contractual in nature and the two $1,000 awards for violations of the Idaho consumer protection statutes. Additionally, to the extent that EMC has any duty to ensure an allocated verdict, that duty is to the insured, and not the injured party. *See id*. at 979.

**C. The district court did not err in denying attorney fees to the Donnellys under I.C. § 12-120(3).**

In its Order disallowing costs and fees, the district court held that the Donnellys were not entitled to attorney fees under I.C. § 12-120(3) in the declaratory action. In so holding, the district court concluded that there was no commercial relationship directly between the Donnellys and EMC.

Idaho Code section 12-120(3) states that:

In any civil action to recover on an open account, account stated, note, bill, negotiable instrument, guaranty, or contract relating to the purchase or sale of goods, wares, merchandise, or services and in any commercial transaction unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney's fee to be set by the court, to be taxed and collected as costs.

It is clear from the facts that there is no direct commercial relationship between EMC and the Donnellys. Therefore, we hold that the Donnellys are not entitled to attorney fees under I.C. § 12-120(3).

**D. The district court did not err in denying attorney fees to the Donnellys under I.C. § 41-1839.**

In its Order disallowing costs and fees, the district court held that I.C. § 41-1839 is not applicable to this case. According to the district court, the statute is inapplicable because the Donnellys are not an insured under EMC's insurance policy with RCI. Additionally, the district court held that even if the statute was applicable, the requirements of the statute were not met because the Donnellys provided no evidence that proof of loss has been furnished as provided in the policy.

On appeal, the Donnellys argue that the district court erred in holding that they are not entitled to attorney fees under I.C. § 41-1839. More specifically, the Donnellys argue that they "were the 'person[s] entitled to the amount justly due' under the policy and EMC denied liability, thereby waiving the requirement of proof of loss." In response, EMC argues that the Donnellys are not entitled to attorney fees because they were not an insured of EMC. Additionally, EMC argues in the alternative that the Donnellys failed to show evidence for a submission of a proof of loss as required under I.C. § 41-1839.

Idaho Code section 41-1839 states in pertinent part:

(1) Any insurer issuing any policy, certificate or contract of insurance, surety, guaranty or indemnity of any kind or nature whatsoever, which shall fail for a period of thirty (30) days after proof of loss has been furnished as provided in such policy, certificate or contract, *to pay to the person entitled thereto the amount justly due under such policy*, certificate or contract, shall in any action thereafter brought against the insurer in any court in this state or in any arbitration for recovery under the terms of the policy, certificate or contract, pay such further amount as the court shall adjudge reasonable as attorney's fees in such action or arbitration.
. . .
(4) Notwithstanding any other provision of statute to the contrary, this section and section 12-123, Idaho Code, shall provide the exclusive remedy for the award

11

of statutory attorney's fees in all actions or arbitrations *between insureds and insurers involving disputes arising under policies of insurance*. Provided, attorney's fees may be awarded by the court when it finds, from the facts presented to it that a case was brought, pursued or defended frivolously, unreasonably or without foundation. Section 12-120, Idaho Code, shall not apply to any actions or arbitrations between insureds and insurers involving disputes arising under any policy of insurance.

(emphasis added).

The dispositive issue on the availability of I.C. § 41-1839 to the Donnellys is whether they are the party entitled to an amount justly due under the policy. It is made clear in Part III.A above that EMC's duty to defend RCI obligates it to pay for the attorney fees taxed against RCI in the Underlying Action. "[T]he defense duty is a covenant in the policy that runs only to the insured." *San Diego Hous. Comm'n v. Indus. Indem. Co.*, 116 Cal. Rptr. 2d 103, 120 (2002). In this case, the policy language "[w]e will pay, with respect to . . . any 'suit' against an insured we defend . . . all costs taxed against the insured in the 'suit'" applies to EMC's obligation to RCI, not to the Donnellys in their capacity as a judgment creditor. So, although the Donnellys are owed attorney fees, they are not—in the absence of an assignment from RCI—owed attorney fees directly from EMC. Therefore, they are not the party entitled to an amount justly due in the context of I.C. § 41-1839. We hold that the Donnellys are not entitled to attorney fees under I.C. § 41-1839.

## IV. CONCLUSION

We hold that the district court did not err when it determined that EMC is required to pay costs and attorney fees taxed against RCI in the underlying action. We also hold that the district court did not err when it determined that the awarded damages are excluded from coverage under the applicable insurance policy. Further, we hold that the district court did not err when it declined to award attorney fees to the Donnellys under I.C. § 12-120(3). Attorney fees are also unavailable under I.C. § 41-1839 since the Donnellys are not entitled to any sums under the policy.


Justices J. JONES and HORTON CONCUR.


Justice EISMANN, specially concurring.

I concur in the majority opinion, but write only to address arguments made by the dissent.

12

"A contract must be interpreted according to the plain meaning of the words used if the language is clear and unambiguous." *Hill v. American Family Mut. Ins. Co.*, 150 Idaho 619, 622, 249 P.3d 812, 815 (2011). " 'Unless contrary intent is shown, common, non-technical words are given the meaning applied by laymen in daily usage—as opposed to the meaning derived from legal usage—in order to effectuate the intent of the parties.' " *Armstrong v. Farmers Ins. Co. of Idaho*, 147 Idaho 67, 69, 205 P.3d 1203, 1205 (2009). "[B]ecause insurance contracts are adhesion contracts, typically not subject to negotiation between the parties, any ambiguity that exists in the contract must be construed most strongly against the insurer." *Id.* at 70, 205 P.3d at 1206.

The insurance policy at issue states, "We will pay, with respect to any claim we investigate or settle, or any 'suit' against an insured we defend: . . . [a]ll costs taxed against the insured in the 'suit'." The plain language of the policy states that Employers Mutual Casualty Company (EMC) will pay all costs taxed against its insured with respect to any suit against the insured that EMC defends.

The policy defines the word "suit" as "a civil proceeding in which damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged." The dissent focuses on the words "to which this insurance applies" in arguing that EMC was not contractually obligated to pay the costs assessed against Rimar Construction, Inc. (RCI). According to the dissent, because the Donnellys did not recover any damages covered by the policy, the underlying lawsuit was not a "suit" under the policy, and therefore there were no costs taxed against RCI in a "suit." In making that argument, the dissent ignores the last two words of the sentence upon which it relies.

As stated above, the entire sentence defines a "suit" as "a civil proceeding in which damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies *are alleged*." (Emphasis added.) In its argument, the dissent ignores the words "are alleged." It is undisputed that covered damages were alleged in the underlying lawsuit. As the dissent concedes, "Since damages for personal injury and injury to the property surrounding the addition were clearly *alleged* in the complaint, there is no question that EMC had a duty to defend this action." Thus, under the clear, unambiguous wording of the insurance policy, the underlying lawsuit was a "suit" under the policy definition, and because

13

EMC defended that suit, it is contractually obligated to pay all costs assessed against RCI, its insured, in that suit.

The dissent contends that the clear wording of the policy should not apply because "an insured could not reasonably expect the insurer to pay costs awarded against the insured in a suit in which there was no coverage for any of the claims." According to the dissent, the insured could not reasonably expect that the policy means exactly what it says. We long ago rejected the doctrine of reasonable expectations. *Casey v. Highlands Ins. Co*., 100 Idaho 505, 509, 600 P.2d 1387, 1391 (1979). In doing so, we stated, "Intent is to be determined from the language of the contract itself and 'in the absence of ambiguity, contracts for insurance must be construed as any other and understood in their plain, ordinary and proper sense, according to the meaning derived from the plain wording of the contract.' " *Id*. (footnotes omitted). Whatever the insured could or could not reasonably have expected cannot alter the clear wording of the policy.

The dissent also argues that when covered and uncovered claims are alleged in the civil proceeding, the insurer is "squarely between a rock and a hard place." According to the dissent,

> On the one hand, if it denied coverage while the complaint continued to *allege* potentially covered damages, if it were eventually determined there were such damages, EMC would subject itself to claims of breach of contract, bad faith, and punitive damages. By continuing with the defense, however, it ended up subjecting itself to claims for costs and attorney's fees by reason of the supplemental payments provision of its insurance policy, or so at least the majority holds. [Citation omitted.]

If EMC does not want to be obligated to pay all costs assessed against its insured in lawsuits that EMC defends, then it simply has to change the wording of its policy. It is certainly free to draft a policy that provides it will pay all costs taxed against the insured in a suit that EMC defends only if the insured is found legally obligated to pay damages to which the insurance applies. It could also have limited its obligation to the payment of costs assessed against its insured on causes of action or theories of liability upon which its insured is found legally obligated to pay damages to which the insurance applies. It is not up to us to rewrite EMC's policy to say what it now wishes it would have said.

14

W. JONES, dissenting:

I respectfully dissent from the majority Opinion. It is my opinion that there is no coverage under the commercial general liability policy issued by Employers Mutual Casualty Company ("EMC") to Rimar Construction, Inc. ("RCI") for the costs and attorney's fees awarded to the Donnellys against RCI in the underlying action, *David and Kathy Donnelly v Rimar Construction, Inc.*, case number CV 2006-0445.

With respect to the coverage issue regarding costs and attorney's fees in the underlying action, the case is complicated by the fact that this was a "mixed action." *See Prichard v. Liberty Mut. Ins. Co.*, 101 Cal. Rptr. 2d 298, 300 (Cal. Ct. App. 2000) (Defining a "mixed action" as one where "the suit against the policyholder includes at least one claim that was potentially covered and therefore triggered the duty to defend."). There is no dispute between the parties that there is no coverage for damages arising from contract claims. The complaint in the underlying action also alleged negligence, seeking damages for personal injury and injury to property not the subject of the contract for remodel of portions of the Donnellys' home. There is no dispute that damages resulting from personal injury or property damage to property outside the area of construction would be covered under the policy issued by EMC. Because the underlying suit included two claims that were potentially covered as well as some that were not, it was a "mixed action."

"An insurer's 'duty to defend arises upon the filing of a complaint whose allegations, in whole or in part, read broadly, reveal a potential for liability that would be covered by the insured's policy.' " *Cnty. of Boise v. Idaho Counties Risk Mgmt. Program, Underwriters*, 151 Idaho 901, 904, 265 P.3d 514, 517 (2011) (quoting *Hoyle v. Utica Mut. Ins. Co.*, 137 Idaho 367, 371–72, 48 P.3d 1256, 1260–61 (2002)). It is well-settled law that the duty to defend under a CGL policy is broader than the duty to indemnify. *Idaho Counties Risk Mgmt. Program Underwriters v. Northland Ins. Cos.*, 147 Idaho 84, 88, 205 P.3d 1220, 1224 (2009). In a mixed action, an insurer has no *contractual* duty to defend those specific claims that are not even potentially covered. *See Aerojet-Gen. Corp. v. Transp. Indem. Co.*, 948 P.2d 909, 921 (Cal. 1997). However, the insurer does have a duty *imposed by law* to defend the entire action, so as not to interfere with its defense of claims that may be covered. *See id.*; *Tibert v. Nodak Mut. Ins. Co.*, 816 N.W.2d 31, 42 (N.D. 2012); *Evanston Ins. Co. v. Legacy of Life, Inc.*, 370 S.W.3d 377, 380 (Tex. 2012); *Maxwell v. Hartford Union High Sch. Dist.*, 262, 814 N.W.2d 484, 496 (Wis.

15

2012); *Shoshone First Bank v. Pac. Emp'rs Ins. Co.*, 2 P.3d 510, 514 (Wyo. 2000). In the present case, therefore, if damages were recovered by the Donnellys for personal injury or property damage that was not merely economic loss, EMC had a duty to defend RCI from all causes of action raised in the complaint. Since damages for personal injury and injury to the property surrounding the addition were clearly *alleged* in the complaint, there is no question that EMC had a duty to defend this action.

An insurer's duty to defend a mixed action ceases at the point where all of the potentially covered claims have been dismissed from the case. *See Aetna Cas. & Sur. Co. v. Mut. of Enumclaw Ins. Co.*, 121 Idaho 603, 607, 826 P.2d 1315, 1319 (1992) (Defense duty "continues until such time as the insurer can show that the claim against the insured cannot be said to fall within the policy's scope of coverage."); *Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.*, 470 So. 2d 810, 815 (Fla. Dist. Ct. App. 1985); *Soc'y Ins. v. Bodart*, 819 N.W.2d 298, 302 (Wis. Ct. App. 2012). Until such time, however, EMC had a duty to defend this case. EMC not only discharged this duty, but also prudently filed a declaratory judgment action to resolve its coverage dispute with RCI. *See Hoyle v. Utica Mut. Ins. Co.*, 137 Idaho 367, 371, 48 P.3d 1256, 1260 (2002). This action was assigned its own number and is completely independent from the underlying action, case number CV 2006-0445. This declaratory action, however, was assigned to the same judge, the Honorable Steve Verby, as the underlying action. Judge Verby stayed further proceedings in this action over the objection of EMC pending the resolution of the underlying construction-defect dispute, likely because it was not known at that point whether the Donnellys would be able to prove their allegations of personal injury or damage to property surrounding the addition. EMC was trying to seek an early determination regarding the uncovered claims so that it could cease any further defense in the underling action. Having been denied that opportunity, EMC was thus placed between a rock and a hard place. On the one hand, if it denied coverage while the complaint continued to *allege* potentially covered damages, if it were eventually determined there were such damages, EMC would subject itself to claims of breach of contract, bad faith, and punitive damages. *See generally Myers v. Workmen's Auto Ins. Co.*, 140 Idaho 495, 511, 95 P.3d 977, 993 (2004). By continuing with the defense, however, it ended up subjecting itself to claims for costs and attorney's fees by reason of the supplemental payments provision of its insurance policy, or so at least the majority holds. Under the

16

circumstances of this particular case, including the insurance policy itself, I disagree with the conclusion of the majority.

I think the proper analysis in this case is to determine whether EMC's defense of the case was pursuant to its "duty" under the policy and the law and whether any "covered claims" were determined in favor of the Donnellys. Once there was a final determination that Donnellys failed to recover on any "covered claims," the duty to defend ceased, as did any claim by RCI for indemnity, either for damages or for costs and fees awarded against RCI. The eventual determination that there were no covered damages necessarily means that there never were any covered claims. This fact was merely not determined until the end of the underlying action. That the district court was not able to make a ruling in this action until the jury in the underlying action determined that there were no covered claims should not create coverage that would not otherwise exist for attorney's fees and costs.

Most importantly, the policy itself establishes that there is no coverage for costs and attorney's fees in cases in which no covered damages are awarded against the insured. The policy provides three coverages: Coverage A for bodily injury and property damage, Coverage B for personal and advertising injury, and Coverage C for medical payments. Those are the only "coverages" provided by the policy. There is, however, a provision for "supplementary payments" to Coverages A and B. That provision states:

> we will pay, with respect to any clam we investigate[1] or settle, or any 'suit' against an insured we defend;
> (a)    All expenses we incur [and]
> . . . .
> (e)    All costs taxed against the insured in the "suit."

The term "suit" is a defined term. It is defined as "a civil proceeding in which damages because of 'bodily injury,' 'property damage' or 'personal advertising injury' *to which this insurance applies* are alleged." (Emphasis added.) It is important to note it does not say a suit is a civil proceeding in which damage from bodily injury or property damage is alleged, but only damages from bodily injury or property damage *to which this insurance applies* is alleged. It is beyond question that the insurance did not apply to this suit because there were no damages awarded that were covered under Coverages A, B, or C to which the insurance applied. It is

---

[1] Apparently the majority would hold that if an insurer merely "investigates" a case, and then decides correctly to deny any defense or coverage, it would still have to pay costs and fees taxed against its insured in any later suit.

17

incomprehensible how "supplementary payments" to Coverages A and B could apply when there is no coverage under Coverages A or B. Black's Law Dictionary defines "supplemental" as "that which is added to a thing . . . to complete it." What can be "added" to a coverage that does not exist?

The district court and the majority rely on *Mutual of Enumclaw v. Harvey*, 115 Idaho 1009, 772 P.2d 216 (1989), which is readily distinguishable. The *Harvey* policy did not contain language in a "supplementary payments" section providing the company would pay "all costs taxed against the insured in any suit defended by the company." Instead, it provided "supplementary <u>coverage</u>" for costs taxed against the insured. *Id.* at 1012, 772 P.2d at 219 (emphasis added). Here, there was no "coverage," supplemental or otherwise, for costs taxed against the insured, but only a supplementary <u>payment</u> in the event that there was coverage under Coverages A or B, which there was not. Additionally, the policy in *Harvey* did not contain the language contained in the EMC policy defining a "suit" as a civil proceeding "in which damages to which this insurance applies are alleged." Both of those distinguishing factors make *Harvey* irrelevant to the decision in the present case.

This case would be more properly decided under *State Farm General Insurance Co. v. Mintarsih*, 95 Cal. Rptr. 3d 845 (Cal. Ct. App. 2009). That case was also a mixed-coverage case in which State Farm defended, as EMC did here, under a Reservation of Rights. In the present case, EMC clearly issued a Reservation of Rights letter to its insured, RCI, stating that although it would defend the case under its duty-to-defend obligation, it reserved all claims for indemnity, which obviously would also include indemnity for any costs and attorney's fees, until the coverage issues were sorted out. RCI never objected to that Reservation of Rights and indeed hired its own counsel to appear on its own behalf and in its own defense of the Donnellys' lawsuit. There is no evidence that EMC even controlled the defense in the underlying action because RCI's independent counsel fully participated. Such joint defense is clearly an acquiescence to the Reservation of Rights letter issued by EMC. Like the EMC policy in the present case, the State Farm policy in *Mintarsih* provided that it would pay costs on suits in which the company defended the insured. *Id.* at 849. The court, however, concluded that the obligation to pay a cost award could arise only if the insurer had a "duty" to defend the insured. *See id.* at 854. The court held that an insured could not reasonably expect the insurer to pay costs awarded against the insured in a suit in which there was no coverage for any of the claims.

18

*See id.* at 854–56. This conclusion makes good sense. If, every time an insurer defended under a reservation of rights and was later found not to have a duty to defend, the insurer was nonetheless obliged to pay costs taxed against the insured, then insurers would be skittish in providing a defense whenever coverage was in doubt.

It has clearly been determined that Donnellys recovered no damages covered by any provision of the EMC policy. Since it is clear under the policy that there is no "coverage" for any damages awarded against the insured, there can clearly be no "supplementary payments" for costs and fees when it is established there is no coverage for damages awarded in the lawsuit. To hold otherwise unjustifiably places EMC squarely between a rock and a hard place. Under the majority's opinion, an insurer is forced either to refuse to defend its insured, even when the duty to defend is obvious (thereby subjecting itself to potential bad faith claims for punitive damages and breach of contract) or to surrender its rights under its policy by agreeing to defend a claim ultimately determined not to be covered by the policy (which, under the majority's reasoning, would subject it to costs and fees taxed against the insured). This whole problem relates back to the inability to resolve the declaratory action early on, because the question of coverage rested on disputed factual issues that were determined only upon the conclusion of the trial in the underlying action. EMC's only reasonable alternative was to issue its Reservation of Rights letter, thereby preserving the issue of coverage until it could be determined, which it later was, that there was no coverage since the Donnellys failed to prevail on a covered claim.