

# Missouri Court of Appeals
## Southern District

### In Division

THOMAS ASH, ANNETTE ASH,  )
ANDREW ASH, and LUCAS ASH,  )
  )
    Plaintiffs-Appellants,  )
  )
v.  )    No. SD37962
  )
GENERAL CASUALTY COMPANY  )    **Filed: January 9, 2024**
of WISCONSIN, et al.,  )
  )
    Defendants-Respondents.  )

APPEAL FROM THE CIRCUIT COURT OF CAMDEN COUNTY

Honorable Kenneth M. Hayden

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS**

This appeal arises out of a bench-tried equitable garnishment suit brought by Thomas Ash, Annette Ash, Andrew Ash, and Lucas Ash ("Plaintiffs") against General Casualty Company of Wisconsin ("General Casualty"). Plaintiffs raise two points on appeal that claim the circuit court erred as a matter of law in ruling that Plaintiffs were not entitled to receive money under the unambiguous terms of a commercial general liability coverage form included in a comprehensive insurance policy ("the Policy") that General Casualty issued to All-Iowa Contracting Company ("All-Iowa").

1

We deny Plaintiffs' first point and affirm the circuit court's ruling that General Casualty's liability for bodily injury was exhausted under the Each Occurrence Limit of the Policy when it paid Separate Claimants $1 million, the face amount of the Policy ("policy limits").  Plaintiffs' second point is granted in part, as the plain language of an endorsement to the Policy obligates General Casualty to pay costs and post-judgment interest on Plaintiffs' judgment.

## Standard of Review

The facts are not in dispute.  "When the underlying facts are undisputed, controversies regarding the interpretation and application of insurance contracts are matters of law" we review *de novo*. ***Lawson v. Progressive Cas. Ins. Co.***, 527 S.W.3d 198, 201 (Mo. App. E.D. 2017).  "Whether an insurance policy is ambiguous is also a question of law this [c]ourt reviews de novo." ***Id.***

## The Undisputed Facts

Plaintiffs were injured when their vehicle collided with another vehicle that was occupied by four members of the Calegar family ("Separate Claimants").  Separate Claimants all died as a result of the collision.  Separate Claimants and Plaintiffs each filed separate lawsuits against All-Iowa on the theory that the collision was caused by All-Iowa's faulty construction of the roadway on which the collision occurred.

Separate Claimants settled with All-Iowa for its policy limits.[1]  Plaintiffs' case against All-Iowa was then tried to the court, and the circuit court entered a judgment in favor of Plaintiffs for $10,025,902.08, plus post-judgment interest and costs.  General Casualty investigated Plaintiffs' claim, but General Casualty refused to defend All-Iowa

---

[1] Separate Claimants also received $3 million from a separate umbrella insurance policy that General Casualty had issued to All-Iowa.  Those proceeds are not at issue in this appeal.

2

against Plaintiffs' suit on the ground that it had exhausted its obligations to All-Iowa when it paid the policy limits to Separate Claimants.

After Plaintiffs obtained their judgment against All-Iowa, Plaintiffs filed and prosecuted the equitable garnishment lawsuit against General Casualty that is the subject of this appeal. The circuit court entered judgment in favor of General Casualty on Plaintiffs' equitable garnishment claim, finding that General Casualty owed no further obligation to All-Iowa after it paid Separate Claimants its policy limits. This appeal timely followed.

**Analysis**

*Point 1*

Plaintiffs' first point claims the circuit court

> erred in concluding that the payment of $1 million [to Separate Claimants] exhausted the coverage under [the Policy] because the [P]olicy was ambiguous in that it promised $2 million in [products-completed operations hazard ("PCOH")] coverage, which provided coverage for non-occurrences, and then attempted to take that coverage away by subjecting the coverage to an "each occurrence" limit; a reasonable insured of average understanding could conclude that the "each occurrence" limit does not apply to PCOH coverage.

We disagree.

"Absent an ambiguity, an insurance policy must be enforced according to its terms. If, however, policy language is ambiguous, it must be construed against the insurer." ***Kirkendoll v. Auto-Owners Ins. Co.***, 658 S.W.3d 158, 160 (Mo. App. W.D. 2022) (quoting ***Seeck v. Geico Gen. Ins. Co.***, 212 S.W.3d 129, 132 (Mo. banc 2007)). "[A]mbiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions." ***Seeck***, 212 S.W.3d at 132 (internal citation omitted). We interpret an

3

insurance policy based upon its ordinary meaning that the average layperson would reasonably understand. ***Farmland Indus., Inc. v. Republic Ins. Co.***, 941 S.W.2d 505, 508 (Mo. banc 1997).

The portion of the Policy at issue in this appeal was drafted and issued on a Commercial General Liability Coverage Form. That form contains five sections of terms and conditions that spell out the coverage, exclusions, and terms of the agreement between General Casualty and All-Iowa. There are multiple endorsements that modify the Commercial General Liability Coverage Form to provide additional coverage or detail further exclusions -- one of which is the subject of Plaintiffs' second point. Coverage A, found in Section I of the Policy, provides insurance coverage for liability that the insured incurs for bodily injury or property damage as follows:

SECTION I – COVERAGES

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

   a. **We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies**. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) **The amount we will pay for damages is limited as described in Section III – Limits Of Insurance**; and

      (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

4

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

**b. This insurance applies to "bodily injury"** and "property damage" **only if:**

(1) **The "bodily injury"** or "property damage" **is caused by an "occurrence"** that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

(Emphasis added.)

Section III – Limits of Insurance of the Policy – provides:

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "[PCOH]"; and

c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit [("PCOA Limit")] is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "[PCOH]".

. . . .

5. Subject to 2. or 3. above, whichever applies, **the Each Occurrence Limit [of $1 million] is the most we will pay for the sum of:**

a. **Damages under Coverage A**; and

b. Medical expenses under Coverage C

**because of all "bodily injury" and "property damage" arising out of any one "occurrence".**

(Emphasis added.)[2]

Under the unambiguous language of the Policy, an ordinary layperson reading Paragraph 1, subsection b of Coverage A would understand that coverage "applies to 'bodily injury' . . . only if . . . [t]he 'bodily injury' . . . is caused by an 'occurrence[.]'" And that layperson would also immediately be alerted to the fact that coverage "is limited as described in Section III – Limits Of Insurance[.]" Paragraph 5 under Section III contains the Each Occurrence Limit that states "[s]ubject to 2. or 3. above, whichever applies, the Each Occurrence Limit [of $1 million] is the most we will pay for the sum of . . . [d]amages under Coverage A . . . because of all 'bodily injury' . . . arising out of any one 'occurrence[.]'" Accordingly, the ordinary meaning of Coverage A of the Policy is that all claims for bodily injury, which can only be brought under Coverage A, are always subject to the Each Occurrence Limit.

---

[2] Section V contains the following relevant definition: "'Products-completed operations hazard': a. Includes all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work[,]'" subject to some exceptions not applicable here.

We also note that Paragraph 3 of Section III, the PCOA Limit, states "[t]he [PCOA Limit] is the most we will pay **under Coverage A** for damages because of 'bodily injury' . . . included in the '[PCOH]'" (emphasis added). Thus, contrary to Plaintiffs' assertion, the unambiguous language of the Policy does not provide that the PCOH coverage applies to non-occurrences or is a separate grant of coverage outside of Coverage A because the PCOH coverage is for bodily injury, and coverage for bodily injury is only provided in Coverage A. Likewise, an ordinary layperson reading the limitation in Paragraph 3 of Section III for the PCOA Limit would understand the ordinary meaning of that paragraph to be that a claim under the PCOH is brought "under Coverage A[,]" which is subject to the Each Occurrence Limit.

Accordingly, under the plain, unambiguous language of the Policy, General Casualty's liability for bodily injury was exhausted under the Each Occurrence Limit when it paid Separate Claimants $1 million. **Kirkendoll**, 658 S.W.3d at 160 ("A party cannot manufacture ambiguity . . . 'by reading only a part of the policy and claiming that, read in isolation, that portion of the policy suggests a level of coverage greater than the policy actually provides when read as a whole'") (quoting **Owners Ins. Co. v. Craig**, 514 S.W.3d 614, 617 (Mo. banc 2017)).

Point 1 is denied.

*Point 2*

Plaintiffs' second point claims:

> The Trial Court erred in concluding that General Casualty is not obligated under the "Supplementary Payments" section of the Policy to pay costs and prejudgment interest awarded in, and the post-judgment interest accruing on, [Plaintiffs'] underlying judgment because even if the [P]olicy limits had been exhausted, a reasonable lay person of average understanding could reasonably interpret the [P]olicy as providing, in

7

addition to the policy limits, coverage for the costs and prejudgment interest awarded in, and the post-judgment interest accruing on, the [Plaintiffs'] underlying judgment in that the Policy states that General Casualty "will pay, with respect to any claim we _investigate_ or settle, _or_ any 'suit' against an insured we defend", costs, prejudgment interest and "all interest on the full amount of any judgment…[.]" Here, it is undisputed that General Casualty _investigated_ [Plaintiffs'] claim.

Plaintiffs' second point relies upon language in an endorsement to the Policy titled "Commercial General Liability Coverage Extension Endorsement" ("the Endorsement"). Specifically, Paragraph F of the Endorsement, titled "Supplementary Payments[,]" states:

> The Supplementary Payments – Coverages A And B provision is replaced by the following:
>
> 1.     We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:
>
>     a. All expenses we incur.
>
>     b. Up to $500 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.
>
>     c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.
>
>     d. All reasonable expenses incurred by the Insured at our request to assist us in the investigation or defense of the "claim" or "suit", including actual loss of earnings up to $250 a day because of time off from work.
>
>     e. All costs taxed against the insured in **_any_** "suit".
>
>     f. Prejudgment interest awarded against the Insured on that part of **the judgment we pay**. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

8

g. All interest on the full amount of **any** judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

*These payments will not reduce the limits of insurance*.

(Emphasis added.)

Plaintiffs' argument is that the above language obligates General Casualty to pay costs, pre-judgment interest, and post-judgment interest on Plaintiffs' judgment because General Casualty "investigated" Plaintiffs' claim. Plaintiffs maintain this is the case even if we find that bodily-injury coverage under Coverage A of the Policy has been exhausted.

We grant Plaintiffs' point in part because we conclude that an ordinary layperson would reasonably understand that the Supplementary Payments section grants coverage for costs and post-judgment interest on Plaintiffs' judgment because General Casualty investigated Plaintiffs' claim. *See Farmland Indus.*, 941 S.W.2d at 508 ("The ordinary meaning of a term is the meaning that the average layperson would reasonably understand"). We deny Plaintiffs' claim that the plain language of the Policy grants coverage for pre-judgment interest as it is subject to an additional, disqualifying restriction that does not apply to costs and post-judgment interest.

At the outset, we must consider whether any coverage exists after the policy limits were paid to Separate Claimants. The answer to that question is "yes," as the Policy explicitly provides for this situation and continues to grant coverage that is above and beyond the $1 million face-amount of the Policy. In Section 1 of Coverage A, the Policy states that "[n]o other obligation or liability to pay sums or perform acts or services is covered *unless explicitly provided for under Supplementary Payments – Coverages A and*

9

*B*." (Emphasis added.) The end of Paragraph F for Supplementary Payments explicitly provides that "[t]hese payments will not reduce the limits of insurance."

At least in regard to costs, other jurisdictions have reached the same conclusion. *See, e.g.*, **Mt. Hawley Ins. Co. v. Casson Duncan Constr., Inc.**, 409 P.3d 619, 621-22 (Colo. App. 2016) (finding under an effectively identical supplementary payments provision that insurer was obligated for costs even though the policy did not cover the underlying damages claim); **Pac. Emps. Ins. Co. v. Alex Hofrichter, P.A.**, 670 So.2d 1023, 1025 (Fla. Dist. Ct. App. 1996) (under sufficiently similar supplementary payments language insurer was liable for costs even though the policy limits had already been exhausted); and **Mut. of Enumclaw v. Harvey**, 772 P.2d 216, 219 (Idaho 1989) (under sufficiently similar supplementary payments language insurer was liable for costs even though the policy limits had already been exhausted).

Thus, even after General Casualty paid its policy limits to Separate Claimants, the plain language of Paragraph F of the Endorsement, titled "Supplementary Payments – Coverages A And B[,]" requires General Casualty to pay additional benefits in addition to the policy limits.

*Costs*

Beginning with Plaintiffs' claim for costs, we conclude that the language of the Endorsement is unambiguous and interpret the language according to its plain and ordinary meaning. Read together, the applicable provisions state "[w]e will pay, with respect to any claim we investigate . . . . [a]ll costs taxed against the insured in any 'suit[.]'" The definition of "suit" in the Policy is:

10

"Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

Plaintiffs' action against All-Iowa is a "suit" as the action was a civil proceeding in which damages for bodily injuries was alleged. General Casualty argues that it is not obligated to pay costs because it did not defend All-Iowa against Plaintiffs' suit. General Casualty presents this same argument in defense of its position that it is not obligated to pay either pre- or post-judgment interest on Plaintiffs' judgment. We disagree, concluding that the plain meaning of the provision does not require that General Casualty defend All-Iowa in order to be obligated to cover All-Iowa's costs because subsection *e* of paragraph F of the Endorsement states that it will pay "[a]ll costs taxed against the insured in *any* 'suit'" (emphasis added).

The limiting language of the more restrictive "any 'suit' against an insured *we defend*" that is present in the opening sentence of paragraph F is *not* present in subsection *e* of paragraph F of the Endorsement. (Emphasis added.) *See **Great W. Cas. Co. v. Barnick***, 529 N.W.2d 504, 506 (Minn. Ct. App. 1995) (noting under an effectively identical supplementary payments provision that "[t]he introductory language is broad, covering any claim investigated or settled or any suit"). If General Casualty did not want to indemnify All-Iowa for its court costs after only investigating a claim, as opposed to

11

ultimately defending the suit that arose from the claim that it investigated, it could have included that restriction in subsection *e* of paragraph F of the Endorsement.

General Casualty did exactly that elsewhere in the Policy. For instance, in another form issued under the Policy -- titled "Employee Benefit Liability Coverage Form" (the "Employee Form") -- there is a similar, but not identical, section that reads:

SUPPLEMENTARY PAYMENTS

We will pay, with respect to any claim or "suit" *we defend*:

1. All expenses we incur.

2. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

3. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

4. All costs taxed against the insured in the "suit".

5. Pre-judgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any pre-judgment interest based on that period of time after the offer.

6. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

(Emphasis added.)

As applicable here, we find two key distinctions between the provision at issue and the provision under the Employee Form quoted above. First, the opening sentence is limited to claims or suits that General Casualty defends. In contrast, subsection 1 of

12

Supplementary Payments creates three alternative scenarios, only one of which is suits that General Casualty defends, when it provides: "We will pay, with respect to any claim we investigate *or* settle, *or* any 'suit' against an insured we defend" (emphasis added). The distinction is significant. If General Casualty wanted to limit its coverage under the provision at issue to only claims that it defends, it could have done so, just as it did in regard to the Employee Form.

Second, the Supplementary Payments provision ends with "any" suit. The Employee Form ends with "the" suit. This distinction is also significant due to the plain, ordinary meaning of "the" (specific) versus "any" (broader), which indicates an intent to broadly cover "any" suit instead of limiting coverage to a single suit.

Accordingly, we hold that General Casualty is obligated under the Policy for costs taxed against All-Iowa in Plaintiffs' suit. *See **Emps. Mut. Cas. Co. v. Donnelly***, 300 P.3d 31, 34-35 (Idaho 2013) (holding that insurer was obligated to pay costs under policy language identical to the Policy at issue here even though the insurer was not obligated to pay damages under the policy).[3]

---

[3] In the same case, the insurer contended that "the clear wording of the policy should not apply because 'an insured could not reasonably expect the insurer to pay costs awarded against the insured in a suit in which there was no coverage for any of the claims.'" ***Emps. Mut. Cas. Co. v. Donnelly***, 300 P.3d 31, 40 (Idaho 2013) (Eismann, J., specially concurring). Judge Eismann's special concurrence addressed a dissenting judge that agreed with the insurer's argument. Judge Eismann rejected the argument on the grounds that Idaho "long ago rejected the doctrine of reasonable expectations" that requires the court to consider what the insured could have reasonably expected, noting instead that "[i]ntent is to be determined from the language of the contract itself and in the absence of ambiguity, contracts for insurance must be construed as any other and understood in their plain, ordinary and proper sense, according to the meaning derived from the plain wording of the contract." *Id.* at 40 (internal quotations and citation omitted). "It is not up to us to rewrite [insurer's] policy to say what it now wishes it would have said." *Id.*

*Pre-judgment Interest*

Subsection *f* of paragraph F of the Endorsement, the provision that Plaintiffs cite in support of their claim that General Casualty is obligated to pay pre-judgment interest on Plaintiffs' judgment, reads:

> [w]e will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend: . . . . [p]rejudgment interest awarded against the Insured *on that part of the judgment we pay.* If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

(Emphasis added.)

Plaintiffs claim that they are entitled to receive pre-judgment interest on "[Plaintiffs]' underlying judgment" against All-Iowa, but that judgment was not a judgment that General Casualty paid. Because General Casualty did not *pay* Plaintiffs' judgment, the plain language of the Endorsement does not provide pre-judgment interest to Plaintiffs.[4] This portion of Plaintiffs' point fails.

*Post-judgment Interest*

Subsection *g* of paragraph F of the Endorsement, the provision upon which Plaintiffs rely in contending that General Casualty is obligated to pay post-judgment interest, reads:

> [w]e will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend: . . . . **[a]ll interest on the full amount of any judgment that accrues after entry of the judgment** and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

(Emphasis added.)

---

[4] Plaintiffs do not claim pre-judgment interest on Separate Claimant's underlying judgment, a judgment that General Casualty did pay.

14

We agree with Plaintiffs that General Casualty is obligated under the plain language of the Policy to pay the post-judgment interest on Plaintiffs' judgment. As thoroughly discussed above, each subsection of the Supplementary Payments section is implicated because General Casualty investigated Plaintiffs' claim. Subsection *g* plainly states that General Casualty will pay "all interest on the full amount of *any* judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance" (emphasis added). The plain and ordinary meaning of subsection *g* of paragraph F of the Endorsement is that General Casualty will pay all post-judgment interest accruing on Plaintiffs' judgment. To date, General Casualty has not done so.

Our supreme court's opinion in ***Allen v. Bryers*** is instructive. In ***Allen***, it agreed with the judgment-creditor plaintiff seeking equitable garnishment, relying on policy language identical to the present case, and held that the insurer was liable for post-judgment interest on the entire $16 million judgment because the insurer had "not paid, offered to pay, or deposited the $1 million policy limit with the circuit court." 512 S.W.3d 17, 40 (Mo. banc 2016); *see also* ***Miller v. Secura Ins. & Mut. Co. of Wis.***, 53 S.W.3d 152, 156 (Mo. App. W.D. 2001) (finding insurer liable for post-judgment interest on entire judgment amount exceeding policy limits under effectively identical policy language even if insurer had not wrongfully refused to defend).

The portion of Point 2 regarding post-judgment interest is granted.

## Conclusion

Because the policy limits for bodily injuries were exhausted when General Casualty paid Separate Claimants' $1 million judgment, we deny Point 1. We grant in

part Plaintiffs' second point, concluding that the plain language of the Endorsement obligates General Casualty to pay costs and post-judgment interest on any judgment that results from a claim that General Casualty investigated. We reverse the circuit court's denial of Plaintiffs' request for court costs and post-judgment interest on Plaintiffs' judgment. The case is remanded to the circuit court to calculate the applicable costs[5] and post-judgment interest and enter an amended judgment against General Casualty that awards that amount to Plaintiffs.

DON E. BURRELL, J. – OPINION AUTHOR

MARY W. SHEFFIELD, J. – CONCURS

JACK A. L. GOODMAN, J. – CONCURS

---

[5] Unlike in *Allen*, Plaintiffs have no contractual relationship with General Casualty, and no bad-faith has been alleged. Thus, no judgment for attorney fees is available to Plaintiffs. *See Givens v. Warren*, 905 S.W.2d 130, 133 (Mo. App. E.D. 1995) ("Attorney fees do *not* fall within the term 'costs'").