772 P.2d 216

**MUTUAL OF ENUMCLAW, a Washington corporation, Plaintiff–Counterdefendant–Appellant,**

**v.**

**Floyd W. HARVEY, individually, and Hells Canyon Excursions, Inc., an Idaho corporation, Defendants–Counterclaimants–Respondents,**

**and**

**Bruce Oakes, Defendant–Respondent.**

**No. 17449.**

Supreme Court of Idaho.

April 7, 1989.

Cantrill, Skinner, Sullivan & King, Boise, for appellant. Frank P. Kotyk argued.

Hawley, Troxell, Ennis & Hawley, Boise, for respondents Harvey and Hells Canyon Excursions, Inc. Merlyn W. Clark argued.

BISTLINE, Justice.

Having considered the briefs and record, and having heard oral argument we are persuaded that the able district judge explained the facts and the law in this case extremely well. Judge Schroeder's opinion addressed all of the issues raised on appeal. We adopt his opinion, in substantial part, as our own. In addition, we will address the issue of attorney fees on appeal following reproduction of the district court's opinion below:

"In 1977 Floyd Harvey, doing business as Hell's Canyon Excursions, filed a complaint alleging that on or about January 31 or February 1, 1974, Bruce Oakes, among others, damaged property belonging to Hell's Canyon Excursions. Mutual of Enumclaw defended Oakes, their insured, in that action under the terms of Homeowner's policy in effect at the time of the occurrence. On March 26, 1984, a judgment was entered in favor of Hells' Canyon and jointly and severally against Oakes and his co-defendant in the amount of $219,200 plus $45,444 costs, including $35,000 attorney fees. Since then Hell's Canyon has demanded that Mutual of Enumclaw pay Hell's Canyon those costs which Hell's Canyon argues are due them under Mutual of Enumclaw's policy insuring Oakes. Mutual of Enumclaw filed its complaint in this action on April 15, 1986, amended May 28, 1986, asking for a declaratory judgment seeking determinations that 1) Mutual of Enumclaw has no duty to indemnify or

provide coverage for Bruce Oakes; 2) Mutual of Enumclaw has no duty to further defend Oakes; 3) Mutual of Enumclaw has no duty to pay that portion of the costs consisting of attorney's fees; 4) Mutual of Enumclaw be awarded attorney fees and costs incurred in the declaratory judgment action. On June 5, 1986, Hell's Canyon answered and counterclaimed for declaratory judgment that:

"1. Mutual of Enumclaw has the duty to pay Hell's Canyon for all costs, including attorney fees, taxed against Bruce Oakes, plus interest on those items; 2) Attorney fees and costs incurred in the declaratory judgment action be awarded to Floyd Harvey/Hell's Canyon.

"On May 7, 1986, Floyd Harvey/Hell's Canyon filed an application for writ of execution on the March 1984 judgment, followed on April 3, 1987 by this summary judgment motion for $45,440.01 plus interest, costs and fees in the instant action. On July 10, 1987, Floyd Harvey/Hell's Canyon filed an amended counterclaim alleging an additional entitlement under the policy to interest on the entire $264,644.01 judgment which consisted of $219,200 damages plus $45,444.01 costs; the defendant's amended motion for summary judgment on August 7, 1987, reflected the new demand.

"The following issues are presented by the motion for summary judgment:

"1. Whether Hell's Canyon has standing to recover portions of the judgment directly from Mutual of Enumclaw instead of from Mutual of Enumclaw's insured, Bruce Oakes.

"2. Whether Mutual of Enumclaw is liable under policy Section II, Supplementary Coverages 2.a to pay the costs taxed against Oakes even though there may not be coverage under the policy for the conduct of Oakes which gave rise to the underlying action;

"3. Whether attorney fees should be considered an element of the costs taxed against Oakes which are payable under the policy.

"4. Whether Mutual of Enumclaw's failure to tender that portion of the judgment consisting of costs taxed against

Oakes is enough to trigger Section II, Supplementary Coverages 2(c) which obligates the insurer to pay 'all interest on the entire amount of any judgment which accrues after entry of the judgment and before the insurer has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of (the insurer's) liability thereon.'

"Issue I: *Standing*

"The insurance policy itself, Section II, Conditions Applicable Only to Section II, 8.b. confers standing. That provision states, 'Any person or organization or the legal representative thereof who has secured such judgment (a judgment against the Insured after actual trial) ... shall thereafter be entitled to recover under this policy to the extent of the insurance afforded under this policy.' The judgment in favor of Hell's Canyon dated March 26, 1984, states that the judgment was entered following a full jury trial. Therefore, under the terms of the policy, Hell's Canyon, having secured such judgment, is entitled to recover under the policy to the extent insurance afforded by the policy encompasses that judgment.

"Issue 2: *Are Costs Taxed Against Oakes Payable even Though Oakes Conduct is not Covered under the Policy?*

"Supplementary Coverages 2. of the policy provides, that the Insurer will pay, as an element of personal liability claims expenses, 'a. all expenses incurred by (the) Company and all costs taxed against the insured in any suit defended by (the) Company;'

"Mutual of Enumclaw maintains that the application of this provision turns on whether coverage existed for the underlying claim giving rise to the lawsuit. Mutual of Enumclaw argues that the jury determined Oakes' conduct to have been intentional. That being the case, the policy excludes coverage under Section II, Exclusion 1.f. which states that the policy does not apply to '... property damage which is either expected or intended from the standpoint of the Insured.' Since the policy excludes coverage, Mutual of Enumclaw maintains that Supplementary Coverages

2.a., the provision allowing the payment of costs, is not operative in this case. Additionally it argues the non-applicability of the cost provision on the grounds that it undertook the defense with a full reservation of rights. Hell's Canyon maintains that the provision obligating the insurer to pay costs is independent of the obligation to pay for the conduct of Oakes, and that the reservation of rights operated to reserve only those rights which existed under the policy of insurance, not to absolve Mutual of Enumclaw of contractual duties nor deprive the insured of Hell's Canyon of contractual entitlements.

"Policy Section II, Supplementary Coverages 2. (Personal Liability Claims Expenses) provides that the company will pay 'a. all expenses incurred by Company and all costs taxed against the insured in any suit defended by Company.' A further sentence appearing at the end of Coverage 2. provides that 'any expenses (costs are treated by the policy as an element of expenses) incurred by this Company under this provision (supplementary Coverage 2.) shall not reduce the applicable limit of liability.' That language, as well as the placement of Coverage 2. under a heading named, 'Supplementary Coverages' implies that the provisions contained therein are separate from and in addition to the basic policy coverage, and, therefore, that Mutual of Enumclaw's obligation to pay such costs is unaffected by the fact that the policy does not cover Oakes' intentionally tortious conduct.

\* \* \*

"In *Liberty National Ins. Co. v. Eberhart*, 398 P.2d 997 (Alaska 1965) the court dealt with the issue of proration of costs. In that case a decedent's estate administrator obtained a $20,000 judgment against the driver of one of the vehicles responsible for the decedent's death. The driver/defendant's policy limits for bodily injury liability were $10,000 on which amount the estate executed. In addition, through garnishment proceedings, the estate obtained $3,401.35 in costs, including attorney's fees computed as a percentage of the entire $20,000 judgment. The Court refused to prorate the costs/attorney fees in relation to the $10,000 policy limits on the basis of the policy language obligating the Company to pay costs. The court saw 'nothing in the ... language of the insurance agreement which supports appellant's view that it is responsible for payment only of a proportionate share of the total costs assessed against its insured ...' Id. at 999. The court observed that 'if (the Company) had wished to contract to pay only a proportionate share of the costs based upon the applicable limit of liability in the policy, it easily could have used appropriate language to achieve that result.' Id. at 1000. Similarly, even when the standard interest clause of a particular policy promises to pay 'post judgment interest' and does not include the phrase 'on the entire judgment' the courts generally have held that the insurer must nonetheless pay interest on the entire judgment, not merely on that portion covered by the applicable limits of liability. Courts dealing with this issue have noted that such interest is expressly treated by the policy as one of a number of supplemental coverages that are not intended to reduce the applicable limit of liability and is thus independent of those limits. *See e.g. United Services Auto. Asso. v. Russom*, 241 F.2d 296 (5th Circuit 1957); *Knippen v. Glenn Calls [Glens Falls] Ins. Co.*, 564 F.2d 525, 529 (D.C.Cir. 1977).

"The results in the cases depend 'upon the language employed by the parties in their contract.' 76 ALR2D 985. Language in the policy of this case does not indicate that payment of costs is conditioned upon a final determination that the policy covers the insured's conduct. The language of the policy says that the Company will pay all costs taxed against the insured in any suit defended by the Company. Beyond what appears to be the clear term of the policy, it is arguable that since the Company has the right to control the defense, including the power to refuse settlement, it should also bear the consequences of its case management decisions, including the consequence that the trial court may tax the opponent's costs against the insured. *See River Valley Cartage Co., Inc. v.*

*Hawkeye–Security Ins. Co.*, 17 Ill.2d 242, 161 N.E.2d 101, 76 ALR2D 978 (1959); *Peterson v. Western Casualty and Surety Co.*, 19 Utah 2d 26, 425 P.2d 769, 772 (1967).

"Mutual of Enumclaw also argues that undertaking Oakes' defense with a reservation of rights exonerates it from having to pay costs. The court rejects this contention. 'It is generally recognized that coverage defenses may be properly preserved by a reservation of rights agreement.' *American Employers' Insurance Co. v. Crawford*, 87 N.M. 375, 533 P.2d 1203, 1208 (1975) (citing *Green v. Aetna Ins. Co.*, 349 F.2d 919 (5th Cir.1965); *Fragman Const. Co. v. Preston Const. Co.*, 1 Ill.App.3d 1002, 274 N.E.2d 614 (1971); *Herman v. Western Casualty and Surety Company*, 271 F.Supp. 502 (E.D.Mo.1967). 'Preservation' implies the continuation, the saving of something that existed. It is not a destruction of the insured's rights nor a creation of new rights for the Company. It preserves that to which the parties had originally agreed. Mutual of Enumclaw, in Section II, Supplementary Coverages 2.a. agreed to pay 'all costs taxed against the insured in any suit defended by the Company.' The fact the company reserved its contractual rights before undertaking the defense in no way dissipates its obligation to pay such costs.

"Issue 3: *Attorney Fees are an Element of Costs*

"Hell's Canyon maintains that the 'costs' Mutual of Enumclaw is obligated to pay under Section II, Supplementary Coverages 2.a. should be interpreted to include attorney fees. Though the word 'costs' as a legal term of art may be ambiguous, it is not so from the perspective of the ordinary person unfamiliar with the jargon of the legal and insurance professions standing in the position of the insured. An insurance policy must be interpreted from that perspective. *Wardle v. International Health & Life Ins. Co.*, 97 Idaho 668, 551 P.2d 623 (1976); *Shields v. Hiram C. Gardner, Inc.*, 92 Idaho 423, 444 P.2d 38 (1968). Similarly, where the policy language is clear and unambiguous, there is no occasion for construction, and coverage must be determined according to the plain meaning of the words employed. *Kromrei v. AID Ins. Co. (Mut.)*, 110 Idaho 549, 716 P.2d 1321 (1986). Webster's Third New International Dictionary (1966) and (1981) defines the term 'costs' in relevant part as:

4. costs *pl.:* expenses incurred in litigation; as a: those payable to the attorney or counsel by his clients esp. when fixed by law b: those given by the law or the court to the prevailing against the losing party in equity and frequently by statute —called also *bill of costs ...*

"The definition represents the common understanding of the term 'costs.' The plain, ordinary and popular meaning of 'costs' is the expense of litigation which includes attorney fees.

"Issue 4: *Mutual of Enumclaw's Failure to Tender Costs Entitles Hell's Canyon to Interest on the Entire Amount of the Judgment*

"Hell's Canyon contends that Mutual of Enumclaw's failure to tender or deposit with the court the costs taxed against Bruce Oakes in the underlying action entitles it to post judgment interest on the entire judgment under the terms of the policy. Mutual of Enumclaw maintains that Hell's Canyon is entitled to no interest because costs are not part of the judgment, and, alternatively, that the obligation ceases upon tender of policy limits to which the insured is entitled, which in this case is zero.

"Section II, Supplementary Coverages 2.c. obligates the company to pay interest until the 'Company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of this Company's liability thereon;' The result turns on the meaning of the term 'limit of this Company's liability thereon.' If that phrase is interpreted to mean 'until the Company has paid, tendered or deposited the amounts for which it is liable under all parts of the insurance contract,' then Mutual of Enumclaw continues to be obligated to pay interest since costs have been determined to be a contractual obligation due under the policy and since Mutual of

Enumclaw has not yet tendered those costs. On the other hand, if 'limit of this Company's liability thereon,' is interpreted to mean those amounts which flow from the underlying, basic coverage for the conduct of Oakes, then the obligation ended at the time that there was a factual basis for determining that Oakes' conduct was not covered by the policy. Hell's Canyon cites *River Valley Cartage Company, Inc. v. Hawkeye–Security Ins. Co.*, 17 Ill.2d 252 [242], 161 N.E.2d 101 (Ill.1959), and *Stibal v. Carland*, 381 N.W.2d 855 (Minn.Ct.App. 1986). In River Valley Cartage Company's tender of the policy limits made almost two months after entry of judgment on the grounds that the tender did not include interest on the entire judgment from the date judgment was entered, which, the insured contended was due under an interest clause obligating the company to pay interest until the company 'has paid, tendered or deposited in court such part of the judgment as does not exceed the limits of the company's liability thereon.' The Court held that the tender of policy limits 'did not operate to terminate the insurer's continuing obligation for interest on the entire (judgment),' noting the following:

> While it is true that interest is a separate and distinct obligation from the judgment, the provision in the policy only makes sense if the word 'judgment' is read to include interest. Otherwise the insurer could, by offering a sum that in most instances the judgment creditor would have to refuse in order to preserve his full rights, free itself from the impact of the provision which is its incentive for speedily discharging its entire obligation.

*River Valley Cartage Company, Inc. v. Hawkeye–Security Ins. Co.*, 17 Ill.2d 242, 161 N.E.2d 101, 104 (Ill.1959).

"In *Stibal v. Carland*, 381 N.W.2d 855 (Minn.Ct.App.1986), the court interpreted an interest clause identical to that in the instant case. The court determined that interest continued to run until the company tendered the policy limits plus interest on the entire judgment from entry of judgment until date of valid tender. The court adopted the reasoning of *River Valley Cartage*, noting that 'the purpose of the interest-on-judgment clause is to give the insurer an incentive to discharge its obligation promptly.' Id. at 857. Though neither of these cases directly addresses the issue of costs, the rationale they used is equally applicable to costs. In this case if limit of the company's liability is interpreted to mean only the basic policy limits, Mutual of Enumclaw has little incentive to settle its obligation for costs promptly, a situation that runs contrary to the interest clause's intent.

"In opposition to Hell's Canyon's position, Mutual of Enumclaw cites *Allegheny Airlines, Inc. v. Forth Corporation*, 663 F.2d 751 (7th Cir.1981) for the proposition that 'limits of this Company's liability thereon,' refers only to the basic policy limits. In that case the court was asked to interpret an interest clause that obligated the insurer to pay 'all interest accruing after the entry of judgment until the company has paid, tendered or deposited in court, such part of such judgment as does not exceed the limits of the company's liability thereon.' The Court held that limit of the company's liability thereon was a 'clear and unambiguous' reference to the principal policy limits and that a tender of those limits, even without accrued interest, was valid and stopped the running of the interest clause. *Id.* at 756. The case does not directly address costs, but its holding is broad enough to encompass them.

"The reasoning of *River Valley Cartage Company, Inc. v. Hawkeye–Security Ins. Co.*, 17 Ill.2d 242, 161 N.E.2d 101 (Ill.1959), and *Stibal v. Carland*, 381 N.W.2d 855 (Minn.Ct.App.1986) is persuasive. Based on those cases and the meaning which would be attached to the clause by an ordinary lay purchaser of homeowner's insurance, 'limits of the Company's liability thereon' includes all amounts for which Mutual of Enumclaw is liable under the policy, including costs and interest. Therefore, Mutual of Enumclaw must pay all interest on the entire judgment, verdict plus costs, from the date of the entry of the Order re Costs and Attorney Fees until it has paid, tendered, or deposited in court

costs, and interest accrued to the date of that tender."

## ATTORNEY FEES

The trial court awarded attorney fees to respondents for successfully defending the declaratory action pursuant to I.C. § 41–1839 (1977) which provides in relevant part:

> **41–1839. Allowance of attorney fees in suits against insurers.**—(1) Any insurer issuing any policy, certificate or contract of insurance, surety, guaranty or indemnity of any kind or nature whatsoever, which shall fail for a period of thirty (30) days after proof of loss has been furnished as provided in such policy, certificate or contract, to pay to the person entitled thereto the amount justly due under such policy, certificate or contract, shall in any action thereafter brought against the insurer in any court in this state for recovery under the terms of the policy, certificate or contract, pay such further amount as the court shall adjudge reasonable as attorney's fees in such action.
>
> (2) In any such action, if it is alleged that before the commencement thereof, a tender of the full amount justly due was made to the person entitled thereto, and such amount is thereupon deposited in the court, and if the allegation is found to be true, or if it is determined in such action that no amount is justly due, then no such attorney's fees may be recovered.

■ In order to receive fees under this statute, the party must prevail in the litigation. *Manduca Datsun, Inc. v. Universal Underwriters Ins. Co.*, 106 Idaho 163, 676 P.2d 1274 (Ct.App.1984). Where the insurer denies any liability, it waives the requirement that a proof of loss be furnished as a prerequisite to recovery of attorney fees. *Bonner County v. Panhandle Rodeo Ass'n*, 101 Idaho 772, 620 P.2d 1102 (1980). In a declaratory action a person entitled to an amount justly due under the policy may recover attorney fees at the trial level and also on appeal. *Martin v. Argonaut Ins. Co.*, 91 Idaho 885, 434 P.2d

103 (1967). Here, it is clear that all of the above principles apply and we affirm the award of attorney fees at the trial level.

■ Where a person entitled to an amount justly due under the policy successfully resists an insurer's appeal from an award of attorney fees in the district court, this Court will award additional attorney fees for the appeal. *Erikson v. Nationwide Mutual Ins. Co.*, 97 Idaho 288, 543 P.2d 841 (1975); *Stephens v. New Hampshire Ins. Co.*, 92 Idaho 537, 447 P.2d 14 (1968); *Haman v. Prudential Insurance Co.*, 91 Idaho 19, 415 P.2d 305 (1966); *Halliday v. Farmers Insurance Exchange*, 89 Idaho 293, 404 P.2d 634 (1965); *Martin v. Argonaut Insurance Co.*, 91 Idaho 885, 434 P.2d 103 (1967).

The trial court judgment is affirmed. Costs and attorney fees on appeal to respondents Harvey and Hells Canyon Excursions.

BAKES, HUNTLEY and JOHNSON, JJ., and McFADDEN, J. Pro Tem, concur.