COLORADO COURT OF APPEALS                                    2016COA164

Court of Appeals No. 15CA1996
Arapahoe County District Court No. 14CV32329
Honorable Charles M. Pratt, Judge

Mt. Hawley Insurance Company, a Illinois corporation,

Plaintiff-Appellant,

v.

Casson Duncan Construction, Inc., a Colorado corporation,

Defendant-Appellee.

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE DAILEY
Furman and Harris, JJ., concur

Announced November 3, 2016

Moye White, LLP, David A. Laird, James Belgum, Denver, Colorado; Quilling, Selander, Lownds, Winslett & Moser, PC, Greg K. Winslett, Dallas, Texas, for Plaintiff-Appellant

Markusson, Green & Jarvis, H. Keith Jarvis, Daniel R. Coombe, Denver, Colorado; BatesCarey, LLP, John E. Rodewald, Chicago, Illinois, for Defendant-Appellee

¶ 1    In this insurance dispute, plaintiff, Mt. Hawley Insurance Co. (Mt. Hawley), appeals the district court's entry of partial summary judgment in favor of defendant, Casson Duncan Construction, Inc. (Casson Duncan). We affirm.

## I.    Background

¶ 2    A homeowners association (HOA) sued developer Mountain View Homes III (MVH III) and general contractor Casson Duncan on claims concerning defective construction of a condominium project. In ensuing arbitration proceedings, MVH III's insurer, Mt. Hawley, defended MVH III under a reservation of rights. The arbitration proceedings resulted in awards of damages and taxable costs to the HOA. Casson Duncan paid the $1.2 million costs award, for which it and MVH III were jointly liable, and thereafter sought contribution from MVH III and its insurer, Mt. Hawley.

¶ 3    Mt. Hawley initiated the present action against its insured, MVH III, the HOA, and Casson Duncan, requesting a declaration that there was no coverage under its commercial general liability policies with MVH III for either the damages or costs awarded in the arbitration proceedings. As pertinent here, Casson Duncan filed a

1

counterclaim for declaratory and monetary relief against Mt. Hawley for payment of MVH III's portion of the costs award.

¶ 4    The parties filed cross-motions for summary judgment as to "coverage" issues. The district court denied summary judgment on all but one of those issues. Based on the language in the insurance policies, however, the district court determined that Mt. Hawley was, as a matter of law, responsible for paying MVH III's portion of the cost award, regardless of whether it was also responsible for paying MVH III's portion of the damages award. Consequently, the district court entered partial summary judgment for Casson Duncan on its counterclaim.

¶ 5    The district court certified its partial summary judgment ruling under C.R.C.P. 54(b) as "final" for purposes of permitting appellate review at this time.

## II.    Analysis

¶ 6    Mt. Hawley contends that the district court erroneously granted Casson Duncan a partial summary judgment because, contrary to the court's ruling, Mt. Hawley's responsibility for payment of costs was, under the policies, inextricably linked to the question whether the policies provided MVH III with coverage for the

HOA's claims. Because the "coverage" issues had not been determined, Mt. Hawley asserts, the "costs" issue could not be determined either. We are not persuaded.

### A.   Mt. Hawley's Settlement with the HOA

¶ 7    Subsequent to the court's summary judgment rulings, Mt. Hawley agreed to pay the HOA an undisclosed amount to settle MVH III's liability in connection with the claims adjudicated in the arbitration proceeding. Initially, Casson Duncan asserted that the settlement removed the coverage issues from the case, and, consequently, "Mt. Hawley has not [established], and never will be able to establish" the premise upon which it refuses to pay MVH III's part of "taxable" costs. In other words, that Mt. Hawley had "no indemnity obligation in this case." We are not persuaded.

¶ 8    Following a settlement, coverage issues can still be determined between an insurer and its insured or a judgment creditor of the insured. *See Nikolai v. Farmers All. Mut. Ins. Co.*, 830 P.2d 1070, 1073 (Colo. App. 1991) ("An insurer . . . does not ordinarily waive its policy defenses by payment of settlement proceeds to a claimant. . . . Here, Alliance did not waive its policy defenses when it settled the claims after issuing a reservation of rights letter."); *see*

*also Bohrer v. Church Mut. Ins. Co.*, 965 P.2d 1258, 1261-67 & n.7 (Colo. 1998) (declaratory judgments and garnishment proceedings are appropriate contexts for resolving coverage issues in third-party victim insurance cases); *Horace Mann Ins. Co. v. Peters*, 948 P.2d 80, 84-85 (Colo. App. 1997) (settlement of underlying litigation did not render coverage issues moot, as between insured and insurer).

¶ 9     Consequently, Mt. Hawley's settlement with the HOA would not preclude it from litigating "coverage" issues with MVH III or, as pertinent here, its potential judgment creditor, Casson Duncan.  If we were to agree that Mt. Hawley's responsibility for paying part of MVH III's costs depends on whether Mt. Hawley's policies provided coverage for the HOA's claims against MVH III's acts, the case would have to be remanded to the trial court for a final determination of coverage.

## B.     *Interpreting the Policies*

¶ 10     Turning to the merits of Mt. Hawley's appeal, the issue is whether the costs taxed against MVH III are payable by Mt. Hawley even if MVH III's misconduct was not covered under the policies.  As the district court recognized, the resolution of this issue depends upon an interpretation of the policies.

¶ 11 "An insurance policy, like any written contract, presents a question of law and, therefore, is appropriate for summary judgment." *Tynan's Nissan, Inc. v. Am. Hardware Mut. Ins. Co.*, 917 P.2d 321, 323 (Colo. App. 1995).

¶ 12 An insurance policy must be interpreted using well-settled principles of contract interpretation. *Chacon v. Am. Family Mut. Ins. Co.*, 788 P.2d 748, 750 (Colo. 1990). Thus, an insurance policy should be construed to give effect to the intent of the parties, and, when possible, the parties' intent should be determined by the language of the policy alone. *Compton v. State Farm Mut. Auto. Ins. Co.*, 870 P.2d 545, 547 (Colo. App. 1993).

¶ 13 In construing an insurance policy, we give words their plain meanings according to common usage. *In re Estate of Heckman*, 39 P.3d 1228, 1231 (Colo. App. 2001). Unless there is an ambiguity, an insurance policy should be enforced as written. *Id.* If an insurance policy is ambiguous — that is, if it is susceptible of more than one reasonable meaning — it must be construed against the insurance company. *Hyden v. Farmers Ins. Exch.*, 20 P.3d 1222, 1224 (Colo. App. 2000).

¶ 14    The policies at issue here have standard "coverages" and "exclusions" sections.  A separate section, entitled "supplementary payments," provides, in pertinent part:

> 1.  We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:
>
> . . . .
>
> e.  All costs taxed against the insured in the "suit."
>
> . . . .
>
> These payments will not reduce the limits of insurance.[1]

¶ 15    Like the district court, we perceive no ambiguity in these provisions.

¶ 16    Colorado law recognizes a distinction between an insurer's duty to indemnify and its duty to defend.  The duty to indemnify depends upon the existence of coverage under the policy; the duty to defend does not.  *See Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.*, 90 P.3d 814, 827 (Colo. 2004); *Hecla Mining Co. v. N.H. Ins. Co.*, 811 P.2d 1083, 1089 (Colo. 1991).

---

[1] There is no question that the arbitration proceeding was a "suit" within the meaning of the policies, as "suit" is defined by the policies to include "[a]n arbitration proceeding in which [property] damages are claimed and to which the insured must submit or does submit with [Mt. Hawley's] consent . . . ."

6

¶ 17    In the policies at issue here, the obligation to pay costs is linked not to coverage, but to the defense of the case. Further, the costs/defense provision is physically separated (in the "supplementary payments" part of the policies) from the "coverage" and "exclusions" parts of the policies. The language and structure of the policies imply that the cost provisions "are separate from and in addition to the basic policy coverage, and, therefore, that [the insurer's] obligation to pay such costs is unaffected by the fact that the policy does not cover [the insured's] . . . conduct." *Mut. of Enumclaw v. Harvey*, 772 P.2d 216, 219 (Idaho 1989).

¶ 18    Indeed, as was the case in *Harvey*, the

> [l]anguage in the policy of this case does not indicate that payment of costs is conditioned upon a final determination that the policy covers the insured's conduct. The language of the policy says that the [insurer] will pay all costs taxed against the insured in any suit defended by the [insurer].

*Id.*

¶ 19    To the same effect, in *Pacific Employers Insurance Co. v. Alex Hofrichter, P.A.*, 670 So. 2d 1023 (Fla. Dist. Ct. App. 1996), the Florida District Court of Appeals said, in a closely analogous situation:

> [W]e need go no further than the clear language of the insurance policy to conclude that in light of the insurer's undertaking of [the insured's] defense, it was obligated to pay the cost judgment which followed. This court has already held that the supplementary payments provision of a policy applies independent of whether or not there is coverage. The policy at issue contains no restrictions or limitations on that promise. . . . Once [the insurer] defended, substantive coverage was not necessary to trigger the obligation to pay costs taxed against the insured in any suit.

*Id.* at 1025 (citations omitted); *see Prichard v. Liberty Mut. Ins. Co.*, 101 Cal. Rptr. 2d 298, 312-13 (Cal. Ct. App. 2000) ("The cost claim is not . . . a substantive replay of the indemnity issue. The policy, in essence, obligates the insurer to pay the *costs* in any lawsuit it *defends*. . . . [T]he supplementary payments provision providing all 'costs taxed' is a function of the insurer's defense obligation, not its indemnity obligation.").[2]

---

[2] These decisions were rendered in jurisdictions which, like Colorado, recognize that the duty to defend is broader than the duty to indemnify and depends on the allegations of a complaint. *See, e.g., Certain Underwriters at Lloyd's of London v. Superior Court,* 16 P.3d 94, 102 (Cal. 2001); *Fun Spree Vacations, Inc. v. Orion Ins. Co.,* 659 So. 2d 419, 421 (Fla. Dist. Ct. App. 1995); *Hoyle v. Utica Mut. Ins. Co.,* 48 P.3d 1256, 1264-65 (Idaho 2002).

¶ 20    Persuaded by this rationale, we, like the district court, conclude that, having conducted MVH III's defense in the arbitration proceedings, Mt. Hawley was, under the terms of the policies, obligated to pay MVH III's portion of taxable costs.

¶ 21    In so concluding, we reject Mt. Hawley's assertion that the policies' cost provisions were superseded by Mt. Hawley's "reservation of rights" letter. Ordinarily, "a reservation of rights letter can only preserve rights already agreed to by the parties." *Huntsman Advanced Materials LLC v. OneBeacon Am. Ins. Co.*, No. 1:08-CV-00229-BLW, 2012 WL 480011, at *10-11 (D. Idaho Feb. 13, 2012); *see also Harvey*, 772 P.2d at 220 (A reservation of rights "is not a destruction of the insured's rights nor a creation of new rights for the [insurer]"; rather, "[i]t preserves that to which the parties had originally agreed.").

¶ 22    There is, under Colorado law, an exception to this principle. In *Hecla Mining*, the supreme court stated that

> [t]he appropriate course of action for an insurer who believes that it is under no obligation to defend, is to provide a defense to the insured under a reservation of its rights to seek reimbursement should the facts at trial prove that the incident resulting in liability was not covered by the policy, or to file a

> declaratory judgment action after the underlying case has been adjudicated.

811 P.2d at 1089. This remedy, the supreme court said in *Cotter*, "allowed insurers . . . to seek reimbursement for defense costs if coverage ultimately did not exist under their policies." 90 P.3d at 828[3]; *see Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd.*, 616 F.3d 1086, 1093 (10th Cir. 2015) (characterizing *Hecla Mining* and *Cotter* as "unmistakably indicat[ing] that Colorado law would allow an insurer to recover defense costs from its insured where it reserved the right to do so by letter, regardless whether the insurer also reserved that right in the underlying insurance policy itself").

¶ 23    "Defense" costs are not, however, the same as "costs taxed against the insured." *Compare, e.g., Gelman Scis., Inc. v. Fireman's Fund Ins. Cos.*, 455 N.W.2d 328, 330 (Mich. Ct. App. 1990) ("Defense is defined as that which is alleged by the party proceeded against in a suit as a reason why plaintiff should not recover or establish what he seeks. Thus, defense costs are monies expended

---

[3] The remedy balanced "the interests of both the insurers and the insureds by ensuring that the broad rule basing the duty to defend on the complaint will not require insurers to pay defense costs if the coverage ultimately does not exist under the policies." *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.*, 90 P.3d 814, 828 (Colo. 2004).

to develop and put forth a theory that the defendant is not liable or only partially liable for the plaintiff's injuries.") (citation omitted), *and Domtar, Inc. v. Niagara Fire Ins. Co.*, 563 N.W.2d 724, 738 (Minn. 1997) ("[D]efense costs" are "those expenses reasonably necessary *either* to defeat liability *or* to minimize the scope or magnitude of such liability."),[4] *with AXA Versicherung AG v. N. H. Ins. Co.*, 769 F. Supp. 2d 623, 625 (S.D.N.Y. 2011) ("Taxable costs are available to the prevailing party."), *and Barry v. Ariz. Dep't of Econ. Sec.*, 542 P.2d 1138, 1139 (Ariz. Ct. App. 1975) ("[I]mposition of Taxable costs [are] for authorized expenses normally allowable to a prevailing party as taxable court costs."), *and Cross v. Elliot*, 69 Me. 387, 388 (1879) ("The law assumes that, all things considered, the taxable costs shall indemnify the prevailing party for his expenses and losses in the litigation.").  The *Hecla Mining* remedy of recouping "defense" costs would not extend, then, to recouping (or not, in the first instance, having to pay) "costs taxed against the insured."

---

[4] Mt. Hawley understood "defense costs" in the same manner: it reserved the right "to seek and to pursue reimbursement from its insureds or any of them of the attorneys' fees and costs it may incur in the future in providing a defense under reservation of rights."

¶ 24    Finally, we reject Mt. Hawley's assertion that our interpretation of the policies leads to absurd results.  *See Harvey*, 772 P.2d at 219 ("[I]t is arguable that since the [insurer] has the right to control the defense, including the power to refuse settlement, it should also bear the consequences of its case management decisions, including the consequence that the trial court may tax the opponent's costs against the insured.").

¶ 25    Mt. Hawley agreed in its policies to pay all costs taxed against MVH III in any suit in which it defended MVH III.  If Mt. Hawley wished to retain a right to seek reimbursement of those costs "in the event it later is determined that the underlying claim [was] not covered by the policy, [it was] *free to include such a term in its insurance contract.*"  *Gen. Agents Ins. Co. of Am. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1103 (Ill. 2005) (emphasis added); *accord Blue Cross of Idaho Health Serv., Inc. v. Atl. Mut. Ins. Co.*, 734 F. Supp. 2d 1107, 1113 (D. Idaho 2010); *Harvey*, 772 P.2d at 220.  Mt. Hawley did not do so here, and this court "cannot now ride to the rescue."  *Aetna Cas. & Sur. Co. v. Pintlar Corp.*, 948 F.2d 1507, 1513 (9th Cir. 1991) (noting that "[i]f an insurer intends the term

'damages' to be construed in a legal technical way, it should indicate that in the policy").[5]

### III.     Conclusion

¶ 26     The judgment is affirmed.

JUDGE FURMAN and JUDGE HARRIS concur.

---

[5] Mt. Hawley's reliance on *Bohrer v. Church Mutual Insurance Co.*, 12 P.3d 854 (Colo. App. 2000), as grounds for a contrary conclusion is misplaced. In *Bohrer*, the division did not interpret the provisions of an insurance policy. Instead, it dealt with a punitive damage award, which would be against public policy for the insurer to cover. *Id.* at 856. The division concluded that, even assuming the policy's language required the insurer to do something, it would be unenforceable on these grounds. *Id.* at 856-57. Unlike the situation in *Bohrer*, we perceive no public policy that would be violated as a result of our interpretation of the policies at issue here.