NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

18-P-983                                        Appeals Court

    ALEX STYLLER  vs.  NATIONAL FIRE & MARINE INSURANCE COMPANY.

                         No. 18-P-983.

        Essex.      March 7, 2019. - June 26, 2019.

        Present:  Vuono, Ditkoff, & Wendlandt, JJ.


Insurance, Construction of policy, Coverage, Interest.  Consumer
    Protection Act.  Practice, Civil, Attorney's fees, Costs,
    Interest.  Judgment, Interest.  Words, "Costs taxed."



    Civil action commenced in the Superior Court Department on
December 7, 2012.

    The case was heard by Joshua I. Wall, J., and motions to
amend the judgment were considered by him.


    Lester E. Riordan, III, for the plaintiff.
    Peter G. Hermes (Kara A. Loridas also present) for the
defendant.


    WENDLANDT, J.  This insurance coverage dispute principally

presents the question whether a supplementary payment provision

of an insurance policy, requiring the insurer to pay "costs

taxed" against an insured, extends to attorney's fees and expert

fees and expenses awarded against the insured, pursuant to G. L. c. 93A, § 9.  We hold that it does not.

Background.  The plaintiff, Alex Styller, brought this declaratory judgment action against the defendant, National Fire & Marine Insurance Company (National Fire or insurer), as the assignee of rights of the insured, FCMNH, Inc. (FCMNH or insured), under the insurance policy between FCMNH and the insurer (policy), relating to the underlying action described in more detail infra.  Briefly, the underlying action stems from demolition and reconstruction work FCMNH performed on Styller's house.  Styller alleged that FCMNH performed the work negligently.  FCMNH was insured by National Fire, which assumed FCMNH's defense.  Styller prevailed, and National Fire denied coverage under the insurance policy.  In a subsequent settlement agreement between FCMNH and Styller, FCMNH assigned its rights against National Fire to Styller.  In the present insurance coverage suit, Styller sought an order requiring National Fire to indemnify him (as FCMNH's assignee) for the judgment he obtained against FCMNH.

1.  The underlying action.  In 2004, Styller entered into a construction contract with FCMNH to demolish and reconstruct his house.  The relationship soured, and Styller withheld payment.  Ultimately, FCMNH commenced the underlying action in Superior Court against Styller for, among other things, breach of

contract.  Styller counterclaimed, asserting breach of contract, negligence, and violations of G. L. c. 142A and G. L. c. 93A. Styller's counterclaims for damage caused by FCMNH's allegedly defective work and violations of G. L. c. 93A and G. L. c. 142A did not fall within the coverage provided by the policy. Nonetheless, because Styller also asserted counterclaims for property damage apart from FCMNH's defective work, the insurer's duty to defend was triggered.

When FCMNH notified the insurer of Styller's counterclaims, the insurer assumed the defense, subject to a reservation of rights.  Although the insurer initially took the position that it would not be responsible for any fees and expenses incurred prosecuting FCMNH's affirmative claims against Styller, the insurer offered to have its counsel manage the whole case for FCMNH, including FCMNH's affirmative claims, and to waive all claims for reimbursement of expenses associated with the case. FCMNH agreed, and the insurer assumed control of the entire case on behalf of FCMNH.

The case was tried to a jury, which found in favor of Styller on FCMNH's claims.  With regard to Styller's counterclaims, the jury found by way of answers to special questions that Styller did not suffer any damage to property other than FCMNH's defective work.  The jury further found that FCMNH was not liable for breach of contract, but was negligent

in performing the work, and awarded Styller $85,409.80 in damages.  The jury also found that Styller was comparatively negligent in the amount of twenty-seven percent.

Following the jury trial, the Superior Court judge conducted a bench trial on Styller's claim that FCMNH committed a deceptive and unfair trade practice as a contractor in violation of G. L. c. 93A (through violations of G. L. c. 142A[1]), which as set forth supra was not a claim covered under the policy.[2]  The judge determined that G. L. c. 142A applied to the contract between Styller and FCMNH, FCMNH violated G. L. c. 142A, and the violation entitled Styller to recover under G. L. c. 93A.

The judge awarded Styller the same amount in damages ($85,409.80) on the G. L. c. 93A claim as the jury had awarded on the negligence claim.  The judge also awarded attorney's fees and expert fees and expenses to Styller under G. L. c. 93A in the amount of $105,374.70 (fee award).[3]  No postjudgment costs

---

[1] General Laws c. 142A, § 17, outlines acts prohibited by contractors or subcontractors and states that "[v]iolations of any of the provisions of this chapter shall constitute an unfair or deceptive act under the provisions of chapter ninety-three A."

[2] Styller waived any claim for violation of G. L. c. 93A apart from his claim of violation of G. L. c. 142A.

[3] The fee award consisted of $80,000 in attorney's fees and $25,374.70 in expert fees and expenses.

were allowed.  FCMNH appealed, and this court affirmed.  FCMNH, Inc. v. Styller, 77 Mass. App. Ct. 1109 (2010).  Following the appeal, the insurer informed FCMNH that it was declining coverage under the policy because the jury found FCMNH liable only for damage to FCMNH's own work, which was property damage excluded from the policy's coverage.  See note 4, infra.

2.  Assignment and coverage lawsuit.  Three years later, FCMNH settled with Styller.  In connection with the settlement, FCMNH assigned to Styller its rights relating to the underlying action under the policy.

Styller then filed this suit against the insurer, seeking a declaratory judgment under G. L. c. 231A, § 1, that the insurer must indemnify FCMNH (and by assignment, Styller) for the full amount of the judgment obtained in the underlying action.  He also asserted a claim against the insurer under G. L. c. 93A (alleging violations of G. L. c. 176D) in view of the insurer's refusal to pay Styller prior to the institution of this coverage lawsuit.  The matter was tried before a different Superior Court judge (trial judge) based on a stipulated record; no witnesses were called.

The trial judge concluded that the insurer had no duty to indemnify FCMNH for the full amount of the judgment in the underlying action because the only claims for which FCMNH was liable related to repair work caused by FCMNH's defective work.

As such, those claims were excluded under the policy.[4] Nonetheless, the trial judge ruled that the insurer was required to indemnify FCMNH (and thus, Styller) for the fee award pursuant to the "Supplementary Payments" provision of the

---

[4] The insurance policy sets forth various exclusions, including the following:

"Damage to Property Exclusion . . .

. . .

(j) Damage To Property

'Property damage' to:

. . .

(5) That particular part of real property on which you or your 'employees,' 'volunteer workers,' or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it.

. . .

"Business Risk Exclusions . . .

. . .

(l) Damage to Your Work

'Property damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor."

policy, which provides that with respect to any "suit" against the insured that the insurer defends, the insurer "will pay" "[a]ll costs taxed against the insured in the 'suit.'" The trial judge further ruled that the insurer was required to indemnify Styller for the postjudgment interest on the fee award pursuant to another provision in the supplementary payments provision of the policy. Under that provision the insurer agreed to pay "[a]ll interest on the full amount of any judgment that accrues after entry of the judgment and before [the insurer has] paid . . . the part of the judgment that is within the applicable limit of insurance." The judge rejected Styller's claim under G. L. c. 93A that the insurer's failure to promptly settle Styller's claim amounted to an unfair or deceptive act because the question of coverage was a novel one.

On cross motions to amend the judgment, the trial judge entered an amended judgment, concluding that the insurer must indemnify FCMNH for postjudgment interest on the full amount of the damages awarded in the judgment (as opposed to just postjudgment interest on the fee award). The trial judge also reduced the total amount that the insurer had to pay Styller by $81,000 -- the amount that Styller received in settlement from other tortfeasors. The parties filed cross appeals from the amended judgment.

Discussion. National Fire maintains that the trial judge erred in deciding that the policy covers (1) the fee award as a "cost[] taxed" against the insured, and (2) postjudgment interest. Because the construction of an insurance contract is a question of law, our review is de novo. See Wilkinson v. Citation Ins. Co., 447 Mass. 663, 667, 669 (2006).

An insurance contract is to be interpreted "according to the fair and reasonable meaning of the words in which the agreement of the parties is expressed." Wilkinson, 447 Mass. at 667, quoting Cody v. Connecticut Gen. Life Ins. Co., 387 Mass. 142, 146 (1982). "Policies of insurance, like all other contracts, must be reasonably construed by giving to the words contained therein their usual and ordinary significance, unless it appears that they are to be given a peculiar or technical meaning." Woogmaster v. Liverpool & London & Globe Ins. Co., 312 Mass. 479, 481 (1942). Where, as here, the contract was written by the insurer, "if the terms of the policy are ambiguous then every doubt is to be resolved against the insurer." Id. We now apply these principles to each of the insurer's claims on appeal.

1. Attorney's fees and expert fees and expenses as "costs taxed." As set forth supra, the parties agree that Styller's G. L. c. 93A claim against FCMNH in the underlying action was not itself a claim covered by the policy. Nevertheless, Styller

maintains that the fee award -- which was awarded to Styller on his G. L. c. 93A claim -- is covered. In contrast, the insurer contends that because no postjudgment costs were "taxed" pursuant to G. L. c. 261, §§ 1 et seq., in the underlying action, it has no obligation to its insured. The dispute centers on the construction of the following provision of the supplementary payments section of the policy:

> "1.  We will pay, with respect to any claim we investigate or settle, or any 'suit' against an insured we defend:
>
> . . .
>
> e.  All costs taxed against the insured in the 'suit.'"

Styller contends that the fee award falls within the plain and ordinary meaning of the term "costs" because the term ordinarily refers to all the expenses incurred during the course of a litigation, including attorney's fees.[5]  The policy, however, does not use the term "costs" in this ordinary sense; instead, it specifically limits "costs" to "costs taxed" (emphasis added) in the technical sense -- namely, the meaning of that term in the context of a legal proceeding.  In

---

[5] Styller also contends that because the decision in the underlying action refers to the fee award as "attorneys' fees and litigation costs," the fee award is a "cost" covered by the provision.  The meaning of "costs taxed" in the insurance contract does not turn on the phrasing of a decision entered long after the insurance policy was executed.  Instead, as set forth supra, the insurance contract must be construed by reference to the words of the agreement itself.  See Woogmaster, 312 Mass. at 481.

particular, the supplementary payments provision refers to the insurer's obligations to pay for "costs taxed against the insured in the 'suit.'" The term "suit" is defined as "a civil proceeding in which damages because of . . . 'property damage' . . . to which this insurance applies are alleged." Thus, the term "costs taxed" must be construed in light of the meaning attached to those words in the context of a civil proceeding.[6] See Woogmaster, 312 Mass. at 481 (technical meaning of terms applied where it appears in context that such meaning was intended).

In the context of civil proceedings, taxable costs ordinarily refer to those costs that are recoverable pursuant to G. L. c. 261, §§ 1 et seq. See Waldman v. American Honda Motor

---

[6] Because we conclude that "costs taxed" is used in the policy in its technical sense, we decline to follow the reasoning (relied on by Styller) in Mutual of Enumclaw v. Harvey, 115 Idaho 1009, 1013 (1989) (construing "costs" pursuant to its plain meaning -- rather than any technical legal meaning -- to include all expenses of litigation, including reasonable attorney's fees). See Employers Mut. Cas. Co. v. Donnelly, 154 Idaho 499, 503 (2013), quoting Mutual of Enumclaw, supra (not using technical meaning of "costs taxed," but instead holding that supplementary payments provision duty to pay costs taxed included attorney's fees; "[t]he plain, ordinary and popular meaning of 'costs' is the expense of litigation which includes attorney fees"). Indeed, Styller acknowledges that "taxable costs" has a technical meaning. Cf. G. L. c. 4, § 6 (for purposes of statutory interpretation, "[w]ords and phrases shall be construed according to the common and approved usage of the language; but technical words and phrases and such others as may have acquired a peculiar and appropriate meaning in law shall be construed and understood according to such meaning").

Co., 413 Mass. 320, 321-322 (1992) ("The usual rule in Massachusetts is that the litigant must bear his own expenses. . . . Certain taxable costs, however, are recoverable as a matter of course by successful litigants [pursuant to] G. L. c. 261, §§ 1 et seq." [quotation and citations omitted]). These "[t]axable costs are deemed full compensation to the prevailing party for the expense of conducting litigation, even though in fact such costs do not cover his legal or other expense." Goldberg v. Curhan, 332 Mass. 310, 311-312 (1955). "The word 'costs,' as applied to proceedings in court, ordinarily means only legal or taxable costs, and does not include attorneys' fees."[7] Burrage v. County of Bristol, 210 Mass. 299, 300 (1911). Similarly, taxable costs do not ordinarily include expert fees and expenses except as nominally allowed, pursuant to G. L. c. 262, § 29. Waldman, 413 Mass. at 322 ("The amount of taxable witness fees is governed by G. L. c. 262, § 29"). Instead, in Massachusetts, "[o]ur traditional and usual approach to the award of attorney's fees for litigation has been to follow the 'American Rule': in the absence of statute, or court rule, we

---

[7] "In taxing costs, courts do not seek to compensate litigants fully for the cost of litigation." Waldman, 413 Mass. at 322. Thus, "even though such costs are only nominal and wholly inadequate," they are ordinarily all that may be awarded to compensate a prevailing party for the expense of conducting the litigation. Id., quoting MacNeil Bros. v. Cambridge Sav. Bank, 334 Mass. 360, 363 (1956).

do not allow successful litigants to recover their attorney's fees and expenses." John T. Callahan & Sons, Inc. v. Worcester Ins. Co., 453 Mass. 447, 449 (2009).  The same traditional rule governs expert fees and expenses.  See Waldman, supra.

Acknowledging this traditional rule, Styller nonetheless contends that the fee award is a "cost[] taxed" because G. L. c. 93A creates a statutory exception to this rule that alters the meaning of "costs taxed."  Specifically, Styller maintains that because G. L. c. 93A, § 9, authorizes a court to award "attorney's fees and costs" to a prevailing party, the fee award is a "cost" in a legal sense and thus covered by the supplementary payments provision.

Our analysis of Styller's argument is informed by the Supreme Judicial Court's decision in Jones v. Boykan, 464 Mass. 285, 296-298 (2013).  In Jones the court considered a statute authorizing the award of "a reasonable attorney's fee as part of the costs" to a prevailing party in a civil rights action.  Id. at 296, quoting 42 U.S.C. § 1988(b) (1994 & Supp. II).  The court rejected the argument that because the statute authorized the attorney's fee award "as part of the costs," it effected a substantive change in the law of Massachusetts, pursuant to which "costs and attorney's fees are treated differently."  Id. at 297.  Thus, the court held that, even though the statute permits a prevailing party to recover its attorney's fees "as

part of the costs," a party's request for "costs" does not encompass a request for attorney's fees; instead, attorney's fees must be requested expressly and separately.  <u>Id</u>. at 297-298.  In other words, the term "costs taxed" in the context of a legal proceeding does not refer to attorney's fees even where a statute authorizes a court to award attorney's fees "as part of the costs."[8]  <u>Id</u>. at 297.

Styller's assertion that "costs" include attorney's fees awarded under G. L. c. 93A stands on even an even shakier ground.  Chapter 93A authorizes the award of "reasonable attorney's fees and costs incurred."  G. L. c. 93A, § 9.  Thus, unlike the statute in <u>Jones</u>, 464 Mass. at 297, which identified "attorney's fee[s] as part of the costs," G. L. c. 93A distinguishes between "costs incurred" and "attorney's fees."  This is consistent with the holding in <u>Jones</u> that the term "costs" in a technical, legal sense does not include attorney's fees.  464 Mass. at 297-298.  Accordingly, the meaning of "costs

---

[8] Accord <u>CIM Ins. Corp</u>. v. <u>Masamitsu</u>, 74 F. Supp. 2d 975, 993 (D. Haw. 1999) ("'Costs taxed' read in context plainly refers to amounts commonly taxed by courts in suits.  The policy could have also provided for 'attorneys' fees' awarded against an insured in any suit the insurer defends.  It did not"); <u>Polygon Northwest Co</u>. v. <u>American Nat'l Fire Ins. Co</u>., 143 Wash. App. 753, 788 (2008) ("Having concluded that both the text and the context of the insurance agreement provide clear indications that both parties intended the phrase 'costs taxed' to have its legal meaning, we further conclude that Washington law is uniform in excluding reasonable attorney fees from that meaning").

taxed," construed as that term is used in the policy to refer to costs taxed in a court proceeding, does not include attorney's fees awarded pursuant to G. L. c. 93A.

The same rationale applies to expert fees and expenses. The fact that the court is authorized to award such fees and expenses pursuant to G. L. c. 93A to a prevailing party, see Waldman, 413 Mass. at 324, does not effect a change in the meaning of the term "costs taxed" in the context of a legal proceeding.[9]  See Jones, 464 Mass. at 297.

2.  Postjudgment interest.  Styller maintains that the insurer is obligated to pay postjudgment interest on the full amount of the judgment entered in the underlying action pursuant to a different supplementary payments provision, which provides in relevant part:

> "1.  We will pay, with respect to any claim we investigate or settle, or any 'suit' against an insured we defend:
>
> . . .
>
> g.  All interest on the full amount of any judgment that accrues after entry of the judgment and before we have

---

[9] Our conclusion that the phrase "costs taxed" in the technical context of a court proceeding does not include the fee award is consistent with the parties' agreement that the G. L. c. 93A claim itself was not covered by the policy.  See General Convention of the New Jerusalem in the U.S. of Am., Inc. v. MacKenzie, 449 Mass. 832, 835 (2007) ("The words of a contract must be considered in the context of the entire contract rather than in isolation").  We need not decide whether a fee award under G. L. c. 93A is covered in situations where the underlying claim is also covered.

paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance."

As set forth supra, no part of the judgment (including the fee award) in the underlying action is covered by the policy. Because "any obligation to pay postjudgment interest under the policy is contingent upon an obligation to indemnify the insured for its liability on the underlying claim," the insurer is not obligated to pay any postjudgment interest on the judgment. Athridge v. Aetna Cas. & Sur. Co., 604 F.3d 625, 632 (D.C. Cir. 2010).

3.  G. L. c. 93A claim.  "When coverage has been correctly denied, as in this case, no violation of the Massachusetts statutes proscribing unfair or deceptive trade practices may be found."  Transamerica Ins. Co. v. KMS Patriots, L.P., 52 Mass. App. Ct. 189, 197 (2001).

Conclusion.  The portion of the amended judgment in favor of Stylla on count I (declaratory judgment) and the declaration entered thereon is reversed, and the matter is remanded for the entry of a new declaration that "costs taxed" in the context of the policy at issue here does not include attorney's fees and expert fees and expenses, and that the insurer is not obligated to pay postjudgment interest.  The portion of the amended judgment in favor of the insurer on count II (violation of G. L. c. 93A) is affirmed.

<u>So ordered</u>.